## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION,
125 Broad Street – 18th Floor
New York, NY 10004,

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street – 18th Floor
New York, NY 10004,

     *Plaintiffs*,

      v.

FEDERAL BUREAU OF PRISONS,
320 First Street NW
Washington, DC 20535,

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530,

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES
200 Independence Avenue SW
Washington, DC 20201,

     *Defendants*.

No. 20-cv-3031

## **COMPLAINT**

1.     The coronavirus pandemic continues to disproportionately ravage the incarcerated population in this country.  Despite knowing early on that this population would be particularly susceptible to infection, illness, and death, the federal government has failed to stop the spread of the virus in federal prisons.  As the coronavirus infects and kills prisoners, guards, and their families, government officials have publicly patted themselves on the back while withholding

vital information about their response to the crisis and violating their statutory obligations of transparency.  This lawsuit seeks to uncover critical information about the federal government's response—and lack thereof—to the coronavirus in detention facilities across the country.

2.      Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (together, the "ACLU") bring this action against the Federal Bureau of Prisons ("BOP"), the United States Department of Justice ("DOJ"), and the United States Department of Health and Human Services ("HHS"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA to immediately release improperly withheld agency records about the response to COVID-19 in detention facilities.

3.      As of the date of this Complaint, the COVID-19 pandemic has killed more than 219,000 people in the United States.  More than 8 million people in the United States have tested positive for the coronavirus.[1]

4.      There are more than 150,000 federal inmates incarcerated in facilities throughout the United States,[2] and they are acutely vulnerable to the coronavirus, for multiple reasons. First, the prison population includes increasing numbers of elderly and other at-risk groups.[3]

---

[1] CDC COVID Data Tracker (last updated Oct. 20, 2020), https://covid.cdc.gov/covid-data-tracker/index.html.

[2] Federal Bureau of Prisons, *Population Statistics* (last updated Oct. 15, 2020), https://www.bop.gov/mobile/about/population_statistics.jsp.

[3] Matt McKillop & Alex Boucher, *Aging Prison Populations Drive Up Costs*, The Pew Charitable Trusts (Feb. 20, 2018), https://www.pewtrusts.org/en/research-and-analysis/articles/2018/02/20/aging-prison-populations-drive-up-costs; U.S. Dep't of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (Feb. 2016), https://www.oversight.gov/sites/default/files/oig-reports/e1505.pdf.

Second, prisoners often lack the liberty to safely practice social distancing, particularly in light of the rampant overcrowding in many prisons.[4]  Third, substandard prison healthcare services heighten the risk facing inmates who are infected while incarcerated.[5]

5.     That heightened risk is not limited to prisoners.  The failure to take adequate precautionary measures against the virus also endangers prisoners' families, prison guards and other staff, lawyers with clients who are incarcerated, and the surrounding communities.  As the president of the corrections officers' union at one BOP prison explained in August, "All of us are trying to survive . . . Inmates and staff, we do not feel safe."[6]

6.     Since the outset of the pandemic, members of Congress from both major parties, public interest organizations like the ACLU, and prisoners and prison guards have recognized that prison populations are uniquely at risk, and have urged the BOP and other federal agencies

_____

[4] ACLU, *COVID-19 Model Finds Nearly 100,000 More Deaths Than Current Estimates, Due to Failures to Reduce Jails* (Apr. 2020), https://www.aclu.org/sites/default/files/field_document/aclu_covid19-jail-report_2020-8_1.pdf; *see also* World Health Organization, Regional Office for Europe, *Preparedness, Prevention and Control of COVID-19 in Prisons and Other Places of Detention: Interim Guidance* (Mar. 15, 2020) (explaining that prisoners "are likely to be more vulnerable to the [COVID-19] outbreak than the general population because of the confined conditions in which they live together for prolonged periods of time"), https://www.euro.who.int/__data/assets/pdf_file/0019/434026/Preparedness-prevention-and-control-of-COVID-19-in-prisons.pdf.

[5] *Id.*; *see also* Kevin Johnson, *Feds Struggle to Provide Prison Medical Care*, USA Today (Mar. 28, 2016), https://www.usatoday.com/story/news/politics/2016/03/28/bureau-of-prisons-justice-department-review/82337734/; Danielle Ivory, *"We Are Not a Hospital": A Prison Braces for the Coronavirus*, N.Y. Times (Mar. 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html.

[6] Kim Bellware, *Prisoners and Guards Agree About Federal Coronavirus Response: 'We Do Not Feel Safe'*, Wash. Post (Aug. 24, 2020), https://www.washingtonpost.com/nation/2020/08/24/prisoners-guards-agree-about-federal-coronavirus-response-we-do-not-feel-safe/.

3

to address the risk of COVID-19 in federal detention facilities.[7]

7.      The BOP knew that the pandemic could have a devastating impact within its facilities.  In January 2020, the White House announced the formation of the "Coronavirus Task Force," a group that would "lead the Administration's efforts to monitor, contain, and mitigate the spread of the virus."[8]  The BOP asserted that it was following the Task Force's guidance and "doing a good job working against an unseen threat."[9]  In its March 2020 "COVID-19 Action Plan," the BOP said that it "ha[d] been planning for [COVID-19] since January 2020," admitting that "the population density of prisons creates a risk of infection and transmission for inmates and staff."[10]

8.      Based on the limited data available, it appears that the BOP has failed to prevent the spread of the coronavirus in its facilities.  BOP data from June suggested that more than one-

---

[7] *See, e.g., id.*; Sens. Richard Durbin & Chuck Grassley, Ltr. to DOJ Inspector General Michael Horowitz (Apr. 21, 2020), https://www.durbin.senate.gov/imo/media/doc/DOJ%20IG%20 COVID-19%20BOP%20letter%20final%20signed.pdf; ACLU, *COVID-19 Model Finds Nearly 100,000 More Deaths Than Current Estimates, Due to Failures to Reduce Jails* (Apr. 2020), https://www.aclu.org/report/flattening-curve-why-reducing-jail-populations-key-beating-covid-19.

[8] Statement from the Press Secretary Regarding the President's Coronavirus Task Force (Jan. 29, 2020), https://www.whitehouse.gov/briefings-statements/statement-press-secretary-regarding-presidents-coronavirus-task-force/.

[9] Luke Barr, *Bureau of Prisons Coronavirus Response Under Fire: 'Reactive,' Not 'Proactive,' Inmates, Staff Say*, ABC News (Apr. 10, 2020), https://abcnews.go.com/Health/bureau-prisons-coronavirus-response-fire-reactive-proactive-inmates/story?id=70063263.

[10] Federal Bureau of Prisons, *COVID-19 Action Plan, Agency-wide Modified Operations*, https://www.bop.gov/resources/news/20200313_covid-19.jsp; *see also* Federal Bureau of Prisons, *Statement from BOP Director* (Mar. 26, 2020) ("The BOP has been working on its coronavirus response plans since January 2020, when we first established a task force"), https://www.bop.gov/resources/news/20200326_statement_from_director.jsp.

third of federal inmates tested for coronavirus had tested positive.[11]  And the numbers were

higher at many facilities: at the federal prison in Lompoc, California, "*more than 90%* of the 997

[inmates] tested came back positive."[12]  Indeed, federal prisons in California, Texas, Ohio, and

North Carolina have endured some of the worst outbreaks in the country.[13]  To date, there have

been more than 16,000 *reported* cases of coronavirus among federal prisoners, and 135 *reported*

deaths.[14]  As of the date of the filing of this complaint, the positive test rate among federal

prisoners is nearly five times as high as the rate of the general population.[15]

9.      In the face of that failure, the BOP has offered rosy assessments of its own

performance and stonewalling in response to requests for public disclosure and congressional

oversight.  In June 2020, for example, the BOP defended its response to the pandemic as

---

[11] Luke Barr, *More than 1 out of 3 Tested Federal Inmates Were Positive for Coronavirus*, ABC
News (Jun. 16, 2020), https://abcnews.go.com/Politics/tested-federal-inmates-positive-
coronavirus/story?id=71275461.

[12] *Id.* (emphasis added).

[13] As of June, "the five largest known clusters of the virus in the United States [were] . . . inside
correction institutions."  Timothy Williams, Libby Seline, & Rebecca Griesbach, *Coronavirus
Cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. Times (Jun. 30, 2020),
https://www.nytimes.com/2020/06/16/us/coronavirus-inmates-prisons-jails.html; N.Y. Times,
*Covid in the U.S.: Latest Map and Case Count, Hundreds of Thousands of Cases Traced to
Clusters* (last updated Oct. 20, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-
us-cases.html.

[14] The Marshall Project, *A State-by-State Look at Coronavirus in Prisons* (last updated Oct. 16,
2020), https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-
prisons.

[15] *Compare* https://www.bop.gov/coronavirus/ (over 16,400 cases out of 66,060 tests, a positive
test rate of nearly 25%), *with* Johns Hopkins University Coronavirus Resources Center, *Daily
State-by-State Testing Trends* (last updated Oct. 20, 2020) (positive test rate of 5.3%),
https://coronavirus.jhu.edu/testing/individual-states; *see also* Brendan Saloner, Kalind Parish,
Julie A. Ward, *COVID-19 Cases and Deaths in Federal and State Prisons*, JAMA (July 8, 2020)
("The COVID-19 case rate for [state and federal] prisoners was 5.5 times higher than the US
population case rate"), https://jamanetwork.com/journals/jama/fullarticle/2768249.

"robust."[16]  In April 2020, after six men had died at Oakdale FCI and the federal corrections officers' union was suing him, Director Michael Carvajal said "we're dealing with it just as well as anybody else and I'd be proud to say we're doing pretty good."[17]

10.     Even when federal officials have admitted the severity of the pandemic,[18] the BOP has concealed from public view critical information about its management of the pandemic and its efforts to protect the prison population—or failure to do so.[19]  For example, in August 2020, Senator Marco Rubio wrote in a letter to the Attorney General that a BOP facility in Florida had failed to follow CDC guidance regarding mask-wearing and "may have ordered staff to return to work despite testing positive for COVID-19."[20]  He underscored that BOP's "delay in meaningfully responding to congressional oversight has eroded trust in the BOP" and

---

[16] Barr, *supra* note 11.

[17] David Shortell, Kara Scannell, & Manu Raju, *Exclusive: 'I Don't Think Anybody Was Ready for This Covid,' Says Head of Federal Prisons*, CNN (Apr. 11, 2020), https://www.cnn.com/2020/04/10/politics/exclusive-interview-bop-carjaval/index.html.  Oakdale endured the first fatal outbreak in the federal prison system, which infected at least 100 inmates and staff.  Janet Reitman, *'Something Is Going to Explode': When Coronavirus Strikes a Prison*, N.Y. Times (Apr. 18, 2020), https://www.nytimes.com/2020/04/18/magazine/oakdale-federal-prison-coronavirus.html.  An associate warden nonetheless asserted that "[t]he BOP's response . . . has been swift and now appears to be proving effective."  Juan E. Segovia Decl. ¶ 3, *Livas v. Myers*, 20-cv-422 (W.D. La. Apr. 10, 2020), ECF No. 8-1.

[18] For example, in April, the Attorney General acknowledged "the dangers that COVID-19 poses to our vulnerable inmates," as well as "significant levels of infection at several of our facilities." Office of the Attorney General, Mem. for Director of Bureau of Prisons (Apr. 3, 2020).

[19] *See, e.g.,* Tonya Simpson & Luke Barr, *As Coronavirus Spreads Through Nation's Jails and Prisons, Lawmakers Demand More Transparency on Toll*, ABC News (Aug. 6, 2020), https://abcnews.go.com/Politics/coronavirus-spreads-nations-jails-prisons-lawmakers-demand-transparency/story?id=72213761.

[20] Carli Teproff, *Rubio Demands Answers from Barr on Sexual Abuse, COVID Response at Florida Prison*, Miami Herald (Aug. 20, 2020), https://www.miamiherald.com/news/special-reports/florida-prisons/article245119495.html.

"potentially endangered its staff, and the inmates in their care."[21]  Director Carvajal has not

testified before Congress or held a press conference since June.[22]  Yet on September 21, DOJ

refused to make the BOP Director and other DOJ officials available for a scheduled House

Judiciary Committee oversight hearing.[23]  Elected officials who sought information from BOP in

March and April reiterated those demands in October, citing "mounting evidence that efforts to

contain the virus with BOP facilities are failing."[24]

      11.     Defendants' secrecy has dire consequences, as every additional day of delay,

inaction, and mismanagement leads to more infections and deaths in detention facilities

nationwide, and increases the spread of the virus into the larger communities in which those

facilities are located.  There is an urgent need for transparency regarding the federal

---

[21] *Id.* Other elected leaders from both parties have demanded information from BOP as well, including in questioning BOP Director Michael Carvajal during his appearance before the Senate Judiciary Committee.  *See, e.g.*, *Kennedy, Cassidy, Johnson Urge Federal Bureau of Prisons to Take Immediate Action at Oakdale Prison* (Apr. 7, 2020), https://www.kennedy.senate.gov/public/2020/4/kennedy-cassidy-johnson-urge-federal-bureau-of-prisons-to-take-immediate-action-at-oakdale-prison; *Warren, Colleagues Demand Answers to Questions About Federal Bureau of Prisons and Private Prison Company's Readiness for Coronavirus Pandemic* (Mar. 24, 2020), https://www.warren.senate.gov/oversight/letters/warren-colleagues-demand-answers-to-questions-about-federal-bureau-of-prisons-and-private-prison-companys-readiness-for-coronavirus-pandemic; Senate Judiciary Committee, *Examining Best Practices for Incarceration During COVID-19* (Jun. 2, 2020), https://www.judiciary.senate.gov/meetings/examining-best-practices-for-incarceration-and-detention-during-covid-19.

[22] Senate Judiciary Committee, *supra* note 21.

[23] Katie Benner, *Justice Dept. Denies House Panel's Request for Officials to Appear*, N.Y. Times (Sept. 22, 2020), https://www.nytimes.com/2020/09/22/us/politics/justice-department-judiciary-committee-hearing.html.

[24] Sens. Elizabeth Warren & Richard Durbin, Ltr. to Att'y Gen. William Barr & Dir. Michael Carvajal (Oct. 2, 2020), https://www.warren.senate.gov/imo/media/doc/2nd%20Letter%20to%20DOJ.BOP%2010.2.2020%20Final.pdf.

government's response to the pandemic in federal prisons to ensure that the government is held accountable and that the civil rights of prisoners are protected going forward.

12.     In April, the ACLU submitted a FOIA request to the BOP and, in July, to its parent agency, the Department of Justice, seeking information about the federal government's response to the risk of COVID-19 in detention facilities.  In July, the ACLU also submitted a FOIA request to the Centers for Disease Control seeking similar information, as well as information regarding guidance for all detention settings including state, local, and immigration facilities.

13.     Although the BOP, HHS, and other offices granted the ACLU's request for expedited processing, that was a dead letter.  Defendants have failed to produce any records.  Meanwhile, the pandemic continues to threaten the people in federal prisons and the communities where they operate.

14.     Because Defendants failed to comply with the applicable time-limit provisions of FOIA, the ACLU has constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i), and is entitled to bring this action seeking the production of records improperly withheld.  The ACLU is entitled to those records, as are the American people.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has personal jurisdiction over the parties.

16.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**PARTIES**

17.     Plaintiff American Civil Liberties Union is a nationwide non-profit and nonpartisan organization with approximately two million members dedicated to protecting the fundamental liberties and basic civil rights guaranteed by the state and federal Constitutions. The ACLU is committed to ensuring that the United States government complies with the Constitution and the laws of this country in matters that affect civil liberties and human rights, including the rights of people who are incarcerated.  The ACLU also is committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights.  Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities.

18.     Plaintiff American Civil Liberties Union Foundation is an affiliated non-profit and nonpartisan organization that shares the goals of the American Civil Liberties Union and represents parties in civil rights and civil liberties litigation.  The two ACLU-affiliated entities jointly sent the FOIA requests at issue in this Complaint.

19.     Defendant BOP is an agency of the U.S. government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702.  The BOP is headquartered in Washington, D.C., and has possession, custody, and control of the records that the ACLU seeks.

20.     Defendant DOJ is a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1).  DOJ has possession, custody, and control of the records that the ACLU seeks, including through its component offices the Office of Legal Counsel, the Office of Justice

9

Programs, the Bureau of Justice Assistance, the Bureau of Justice Statistics, and the National Criminal Justice Reference Center.

21.    Defendant HHS is a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1).  HHS has possession, custody, and control of the records that the ACLU seeks through its component office the Centers for Disease Control and Provisions and Agency for Toxic Substances and Disease Registry ("CDC").

## FACTS

22.    On April 29 and July 1, 2020, the ACLU submitted FOIA requests to the BOP, DOJ, and CDC for records relating to the administration's response to risk of COVID-19 infecting and killing people living and working in federal detention facilities throughout the United States, as well as those living in the surrounding communities.  None of the agencies have satisfied their FOIA obligations in response to the requests.

### A.    The ACLU's April 29 BOP Request and the BOP's Responses

23.     On April 29, 2020, the ACLU submitted a FOIA request to BOP (Ex. A) seeking the following records:

All communications and documents discussing actions to address the risk of COVID-19 for people living and working in Detention Facilities and the likely outcomes of those actions;

All communications and documents related to estimating or predicting COVID-19 testing capacity, infection spread, and likely mortality among people living and working in Detention Facilities;

All communications and documents regarding suspected or confirmed COVID-19-related exposures, infections, and deaths among individuals living and working in Detention Facilities;

All communications and documents regarding the risk of spreading COVID-19 to the communities surrounding Detention Facilities via movement of staff, private

contractors, visitors, incarcerated people, and others into, out of, and between those facilities;

All communications and documents between or among Detention Facility employees, including executive staff, supervisors, and staff, regarding employees' access to hygiene, access to protective equipment, social distancing or lack thereof, or other risks of employee exposure to COVID-19 within Detention Facilities;

All communications and documents regarding COVID-19-related Grievances, including but not limited to those discussing access to hygiene, protective equipment, social distancing or lack thereof, or other risks of exposure to COVID-19 within Federal Detention facilities, and including but not limited to communications and documents regarding how Detention Facility employees should respond to Grievances in light of changing DOJ and BOP guidance;

All communications and documents dated January 1, 2016 to the present regarding action plans or other responses to be taken in the event of a potential infectious disease outbreak within Detention Facilities, including but not limited to an outbreak like that of COVID-19;

All communications and documents reflecting the models or algorithms used to estimate or predict COVID-19 infection rates and likely mortality throughout the country, including whether any models or algorithms took into account the spread of COVID inside and through Detention Facilities;

All communications and documents regarding COVID-19 testing within Detention Facilities, including but not limited to the number of tests administered to both staff and incarcerated people, the number projected to be administered to both staff and incarcerated people, plans to publicly report the results of those tests, the frequency with which test results will be reported publicly, and the timeline for administering those tests;

All communications and documents regarding Congressional or state-based inquiries into COVID-19-related issues within Detention Facilities, including but not limited to responses provided thereto;

All communications and documents containing or regarding guidance on transfer of people incarcerated at Detention Facilities to Other Custodial Settings, or release from Detention Facilities to noncustodial settings, due to COVID-19, including but not limited to:

a.      Determination of which people incarcerated are eligible for and will ultimately be cleared for transfer or release, including but not limited to determination of which people incarcerated are vulnerable to COVID-19 contraction on the basis of health or age;

11

b.      Creation of and changes to the criteria used to determine which eligible people will ultimately be cleared for transfer or release, including but not limited to Attorney General Barr's March 26 and April 3, 2020 memoranda, and BOP's April 21, 2020 memoranda;

c.      How DOJ or BOP determined, quantified, or measured how denying transfer or release based on these criteria would benefit public safety *more than* transferring or releasing incarcerated persons to Other Custodial Settings or non-custodial settings to avoid harm to those persons, to Detention Facility employees, and/or to people living in communities near Detention Facilities;

d.      Guidance provided to United States Attorneys and Assistant United States Attorneys in granting or opposing compassionate release and other motions for reduced sentences based in whole or in part on COVID-19.

24.      The April 29 request sought all responsive records dated November 1, 2019 to the present, unless otherwise noted.

25.      The ACLU sought expedited processing of the April 29 request, citing the urgent need to inform the public about the BOP's response to the potential spread of a deadly pandemic within its facilities and the ACLU's activities as an organization "primarily engaged in disseminating information" within the meaning of FOIA.

26.      On April 29, 2020, BOP acknowledged receipt of the request and assigned it request number 2020-03469.  The acknowledgement letter stated that the ACLU's request "meets the requirement to be processed on an expedited basis" but asserted that processing "may take up to six months."

27.      Nearly two months later, on June 26, 2020, the ACLU received an email from BOP, stating that "BOP continues to process your FOIA request" and directing the ACLU to generic resources on the BOP website.

28.      Despite the fact that the BOP "expedited" the ACLU's requests, and that they seek critical information related to an unprecedented pandemic, the BOP has still not determined

whether it will comply with the ACLU's requests, nor has it produced a single document.  The

BOP's response is now over four months late.  The prison population and general public have an

urgent need for this information.

      **B.**     **The ACLU's July 1 Requests and the Responses from DOJ and CDC**

      29.     On July 1, 2020, the ACLU sent FOIA requests to DOJ and its component offices,

as well as to the CDC.

*July 1 DOJ Requests*

      30.     The ACLU sent FOIA requests to the DOJ's FOIA/PA Mail Referral Unit, as well

as the following DOJ offices: the Bureau of Justice Statistics, the Bureau of Justice Assistance,

the National Criminal Justice Reference Center, the Office of Justice Programs, and the Office of

Legal Counsel.  These requests are attached as Exhibits B, C, D, E, F, and G.  The requests are

similar in substance to the April 29 BOP request, with some limited differences.

      31.     For example, the requests sent to the DOJ's FOIA/PA Mail Referral Unit, the

Bureau of Justice Statistics, Bureau of Justice Assistance, the National Criminal Justice

Reference Center, and the Office of Justice Programs sought two additional categories of

documents not expressly referenced in the April 29 BOP request:

> All communications and documents regarding grants, training, or best practices to
> reduce the risk of COVID-19 for people living and working in Detention Facilities.

> All communications and documents reflecting BOP's, USMS's, and DOJ's
> assessment of social distancing inside Detention Facilities, including but not
> limited to discussions regarding the importance of social distancing or the number
> of incarcerated people who would have to be transferred outside Detention
> Facilities to ensure social distancing inside them.

> Ex. D.

      32.     In addition, the request sent to the Office of Legal Counsel sought another

category of documents not expressly identified in the April 29 BOP request:

All communications, documents, opinions, memoranda, or guidance related to COVID-19.

Ex. G.

33.     On July 8, 2020, DOJ acknowledged receiving and assigned tracking numbers to the FOIA requests sent to the Office of Justice Programs (20-FOIA-00218), Bureau of Justice Statistics (20-FOIA-00219), National Criminal Justice Reference Center (20-FOIA-00220), and Bureau of Justice Assistance (20-FOIA-00221).  DOJ granted the ACLU's request for expedited processing with respect to these FOIA requests.

34.     On July 10, 2020, DOJ acknowledged receiving the ACLU's FOIA request sent to DOJ's FOIA/PA Mail Referral Unit.  This request was "combined with" the April 29 BOP request (No. 2020-03469), and DOJ granted expedited processing.

35.     On July 10, 2020, the Office of Legal Counsel (OLC) acknowledged receipt of the ACLU's FOIA request, assigning it tracking number FY20-116.

36.     The ACLU has not received any further communication regarding the April 29 request to the BOP or any of the July 1 requests to DOJ.

### *July 1 Request to CDC*

37.     On July 1, 2020, the ACLU sent a FOIA request to the CDC.  This request is attached as Exhibit H.

38.     On July 17, 2020, the CDC acknowledged receipt of the ACLU's FOIA request and assigned it reference number #HQ-REF-20-00041.  The agency granted the ACLU's request for expedited processing.

39.     The ACLU has not received any further communication from the CDC regarding the July 1 request.

14

## CLAIM FOR RELIEF I
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

40.     The ACLU properly requested records within the possession, custody, and control of Defendants.

41.     Defendants are agencies subject to and within the meaning of FOIA, and they must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

42.     Defendants are wrongfully withholding non-exempt agency records requested by the ACLU by failing to produce non-exempt records responsive to its FOIA requests.

43.     Defendants are wrongfully withholding non-exempt agency records requested by the ACLU by failing to segregate exempt information in otherwise non-exempt records responsive to the ACLU's FOIA requests.

44.     Defendants' failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

45.     Because Defendants failed to comply with the applicable time-limit provisions of FOIA, the ACLU has constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

46.     The ACLU is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## CLAIM FOR RELIEF II
## Violation of FOIA, 5 U.S.C. § 552
## Failure to Conduct Adequate Searches for Responsive Records

47.    The ACLU properly requested records within the possession, custody, and control of Defendants.

48.    Defendants are agencies subject to and within the meaning of FOIA, and they must therefore make reasonable efforts to search for requested records.

49.    Defendants have failed to promptly review agency records for the purpose of locating those records that are responsive to the ACLU's FOIA requests.

50.    Defendants' failure to conduct adequate searches for responsive records violates FOIA and applicable regulations.

51.    Because Defendants failed to comply with the applicable time-limit provisions of FOIA, the ACLU has constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

52.    The ACLU is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to the ACLU's FOIA requests.

## REQUEST FOR RELIEF

WHEREFORE, the ACLU respectfully requests the Court to:

a.    Declare unlawful the Defendants' failure to comply with FOIA;

b.    Declare that Plaintiffs are entitled to disclosure of the requested records;

c.    Order Defendants to immediately process the requests and disclose, in their entirety, unredacted versions of all records responsive to the ACLU's requests that are not specifically exempt from disclosure under FOIA, including any non-identical copies of any such records;

16

     d.        Enjoin Defendants from charging the ACLU search, review or duplication fees of the processing of the requests;

     e.        Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiffs' Requests;

     f.        Retain jurisdiction of this action to ensure that no agency records are wrongfully withheld;

     g.        Award Plaintiffs their reasonable attorney's fees and litigation costs incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

     h.        Grant such other relief as the Court may deem just and proper.


DATED: October 21, 2020


Respectfully submitted,

_Thomas G. Hentoff_
_____
Thomas G. Hentoff (D.C. No. 438394)
Nicholas G. Gamse (D.C. No. 1018297)
Suraj Kumar (D.C. No. 1632752) (*application for admission pending*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
thentoff@wc.com
ngamse@wc.com
skumar@wc.com

Somil Trivedi (D.C. No. 1617967) (*application for admission pending*)
American Civil Liberties Union Foundation
915 Fifteenth Street, N.W.
Washington, DC 20005
(202) 715-0802
strivedi@aclu.org

Ezekiel R. Edwards (*pro hac vice application forthcoming*)
American Civil Liberties Union Foundation
125 Broad Street – 18th Floor
New York, NY 10004
(212) 549-2610
eedwards@aclu.org

Arthur B. Spitzer (D.C. No. 235960)
American Civil Liberties Union Foundation of the District of Columbia
915 15th Street, NW – 2nd floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

David L. Sobel (D.C. No. 360418)
5335 Wisconsin Avenue, NW
Suite 640
Washington, DC 20015
(202) 246-6180
sobel@att.net

*Attorneys for Plaintiffs*