# Exhibit C



National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

Susan N. Herman
*President*

Anthony D. Romero
*Executive Director*

Richard Zacks
*Treasurer*

July 1, 2020

Monica Potter-Johnson
Bureau of Justice Statistics
Office of the General Counsel
Attention: FOIA Staff
810 7th Street, NW
Room 5400
Washington, DC 20531
SENT VIA EMAIL: FOIAOJP@USDOJ.GOV

**Re:** **Request Under Freedom of Information Act Concerning COVID-Related Risk, Modeling and Infection Spread in Bureau of Prisons Detention Facilities (Expedited Processing & Fee Waiver Requested)**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to the Trump Administration's response to the risk of COVID-19 infecting and killing people living and working in the detention facilities it administers throughout the United States, as well as those living in communities containing federal detention centers.

### I. Background

COVID-19 is a disease caused by a new strain of coronavirus that began spreading in December 2019.[2] The World Health Organization (WHO) has declared the novel coronavirus outbreak a pandemic.[3]

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] World Health Org., Q&A on Coronaviruses (COVID-19) (Mar. 9, 2020), https://www.who.int/news-room/qa-detail/q-a-coronaviruses.

[3] Dr. Tedros Adhanom Ghebreyesus, Dir. Gen., World Health Org., Opening Remarks at the Media Briefing on COVID-19 (Mar. 11, 2020).

The first known case in the United States of COVID-19 was confirmed in the state of Washington on January 20, 2020.[4] The White House Coronavirus Task Force was established on January 29.[5] On January 31, the Trump Administration declared a public health emergency.[6]

From the outset of the COVID-19 crisis, it was clear that the impact on people living and working in Federal detention facilities was potentially catastrophic. As of February 29, 2020, at the peak of the outbreak in Wuhan, China, over half of all new infection cases were incarcerated people.[7] The ACLU was sounding the alarm by early March.[8] Congressional leaders quickly sought clarity - from March 5 through March 12, 15 U.S. Senators and one U.S. Representative wrote letters to the Bureau of Prisons (BOP) and the U.S. Attorney General requesting descriptions on their preparation for and precautions against the spread of COVID-19 in federal facilities.[9] On March 18, the American Federation of Government Employees (AFGE)—the union representing federal corrections officers—chastised the government for its "piecemeal steps" to address union members' working conditions.[10] On March 15, the WHO warned that "enhanced consideration should be given to resorting

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

[4] Holshue ML, DeBolt C, Lindquist S, Lofy KH, et al. (March 2020). "First Case of 2019 Novel Coronavirus in the United States". N. Engl. J. Med. 382 (10): 929–936.

[5] Statement from the Press Secretary Regarding the President's Coronavirus Task Force" (Press release). White House. January 29, 2020. Archived from the original on March 3, 2020. Retrieved March 15, 2020. https://web.archive.org/web/20200303171648/https:/www.whitehouse.gov/briefings-statements/statement-press-secretary-regarding-presidents-coronavirus-task-force.

[6] Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of Persons who Pose a Risk of Transmitting 2019 Novel Coronavirus". White House. Archived from the original on February 6, 2020. Retrieved March 22, 2020, *available at* https://web.archive.org/web/20200206080550/https:/www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-persons-pose-risk-transmitting-2019-novel-coronavirus.

[7] Zi Yang, Cracks in the System: COVID-19 in Chinese Prisons, THE DIPLOMAT (March 9, 2020), *available at* https://thediplomat.com/2020/03/cracks-in-the-system-covid-19-in-chinese-prisons.

[8] Maria Morris, ACLU News and Commentary (March 6, 2020), *available at* https://www.aclu.org/news/prisoners-rights/are-our-prisons-and-jails-ready-for-covid-19/

[9] Letter to Michael Carvajal, BOP Director, from Sen. Kamala Harris (Mar. 5, 2020), *available at* https://www.harris.senate.gov/imo/media/doc/Letter%20to%20BOP%20Director%20Carvajal.pdf; Letter to Michael Carvajal, BOP Director, from Sen. Elizabeth Warren, et al (Mar. 9, 2020), *available at* https://www.warren.senate.gov/imo/media/doc/2020-03-09%20Senator%20Warren%20Letter%20to%20BOP%20re%20Coronavirus.pdf; Letter to Attorney General William Barr from U.S. Rep. Jerrold Nadler (Mar. 12, 2020), *available at* https://judiciary.house.gov/uploadedfiles/2020-03-12_letter_to_ag_barr_re_covid-19.pdf..

[10] Press Release, AFGE, *Administration Finally Taking Coronavirus Threat Seriously with Latest Guidance but More Must be Done to Protect Federal Workers and Citizens, Union Says* (March 18, 2020), *available at* https://www.afge.org/publication/administration-finally-taking-coronavirus-threat-seriously-with-latest-guidance-but-more-must-be-done-to-protect-federal-workers-and-citizens-union-says.

to non-custodial measures at all stages of the administration of criminal justice, including at the pre-trial, trial and sentencing as well as post-sentencing stages."[11] And even prior to COVID-19, the Department of Justice (DOJ) itself regularly published data on the high rates of death from respiratory disease in state and federal detention.[12]

Weeks after the first reported COVID-19 case in the United States, on March 13, 2020, the BOP released a COVID-19 action plan that largely focused on restricting access to prisons and limiting movement of incarcerated persons. The BOP updated its action plan on March 19, indicating that incarcerated persons will continue to be moved under certain limited conditions.[13]

On March 21, 2020, the BOP reported its first confirmed case of COVID-19 at the Metropolitan Detention Center in Brooklyn.[14] Within days, the COVID-19 infection rate increased nine-fold, according to BOP's accounting.[15] Seven days after this first confirmed case, the BOP reported its first death due to COVID-19 at the Oakdale Federal Correctional Institution in Oakdale, Louisiana.[16]

One day before passage of the CARES ACT on March 27, 2020, U.S. Attorney General Barr, (AG Barr), directed the BOP to utilize home confinement to decrease the risks to the health of certain incarcerated persons. On March 31, the BOP announced that all incarcerated persons would be placed on a 14-day lock down.[17] On April 3, AG Barr issued a second directive to the BOP to instruct it to move with dispatch to move vulnerable populations and to

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

[11] World Health Organization, Regional Office for Europe, Preparedness, prevention and control of COVID-19 in prisons and other places of detention: Interim guidance (Mar. 15, 2020), http://www.euro.who.int/__data/assets/pdf_file/0019/434026/Preparedness-prevention-and-control-of-COVID-19-in-prisons.pdf.

[12] Bureau of Justice Statistics, Mortality in State and Federal Prisons, 2001-2016 – Statistical Tables, February 2020, *available at* https://www.bjs.gov/content/pub/pdf/msfp0116st.pdf.

[13] Congressional Research Service, Federal Prisoners and COVID-19: Background and Authorities to Grant Release (Apr. 23, 2020), *available at* https://crsreports.congress.gov/product/pdf/R/R46297.

[14] Michael Balsamo, AP Exclusive: 1st Fed Inmate Tests Positive for Coronavirus, NBC NEW YORK (March 21, 2020), *available at* https://www.nbcnewyork.com/news/local/ap-exclusive-1st-fed-inmate-tests-positive-for-coronavirus/2338122.

[15] Walter Pavlo, Bureau Of Prisons COVID-19 Outbreak Growth Could Overwhelm Agency, FORBES (Mar. 20, 2020), *available at* https://www.forbes.com/sites/walterpavlo/2020/03/30/bureau-of-prisons-covid-19-outbreak-growth-could-overwhelm-agency/#381490735473.

[16] Federal Bureau of Prisons, Press Release, Inmate Death at FCI Oakdale I (Mar. 28, 2020), available at https://www.bop.gov/resources/news/pdfs/20200328_press_release_oak_death.pdf.

[17] Anastasia Tsioulcas, Prisoners Across U.S. Will Be Confined For 14 Days To Cut Coronavirus Spread, NPR (Mar. 31, 2020), *available at* https://www.npr.org/sections/coronavirus-live-updates/2020/03/31/824917318/prisoners-across-country-will-be-confined-for-14-days-to-cut-coronavirus-spread.

give priority consideration to release persons from institutions where the virus had already spread to dozens of staff and incarcerated persons, resulting in the death of five incarcerated persons and one staff member being placed on a ventilator.[18]

On April 6, 2020, the Attorney General issued a memorandum to the U.S. Attorney's Offices and the heads of components of the DOJ to provide guidance on when DOJ should seek pretrial detention for defendants, noting that prosecutors should consider the "medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic."[19]

On April 15, 2020, the Inspector General announced remote inspections of COVID-impacted BOP facilities to ensure that they are taking proper precautions against the spread of the coronavirus. The announcement came after repeated complaints by staff and incarcerated persons over unsanitary conditions inside many facilities, the lack of social distancing and problems getting protective equipment such as masks.[20] Separately, a DOJ team reporting to AG Barr began to conduct a review of conditions at coronavirus-plagued federal prisons in in Louisiana, Ohio North Carolina, and California.[21] The team met with local health officials from surrounding communities in each of the locations to assess the broader impact of the outbreaks.

On April 21, 2020, M.D. Carvajal, the BOP Director, sent a memorandum to families and friends of people incarcerated in federal facilities outlining COVID-19 safeguards implemented within BOP.[22] The memorandum described staff screenings and temperature checks when entering facilities, securing people in their cells or assigned quarters, serving meals within units, and aggressive screenings for suitability for transfers to home confinement

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

[18] Walter Pavlo, AG William Barr's Memo To Bureau Of Prisons: 'Time Is Of The Essence', FORBES (Apr. 4, 2020), *available at* https://www.forbes.com/sites/walterpavlo/2020/04/04/ag-william-barrs-new-memo-to-bureau-of-prisons-time-is-of-the-essence/#42a71b5e6805.

[19] Memorandum from Attorney General William Barr to All Heads of Department Components and All United States Attorneys (Apr. 6, 2020), *available at* https://www.justice.gov/file/1266901/download.

[20] Sarah Lynch, U.S. Justice Department watchdog to inspect federal prisons' handling of coronavirus, REUTERS (Apr. 15, 2020), *available at* https://www.reuters.com/article/us-health-coronavirus-usa-prisons/u-s-justice-department-watchdog-to-inspect-federal-prisons-handling-of-coronavirus-idUSKCN21X2Q0.

[21] Kevin Johnson, DOJ Team Reviewing Conditions at Virus-Plagued Federal Prisons; IG Leading Separate Probe, USA Today (Apr. 16, 2020), *available at* https://www.usatoday.com/story/news/politics/2020/04/16/doj-launches-review-prison-virus-deaths-infections-mount/5144320002/.

[22] Memorandum to Inmate Families and Friends from M.D. Carvajal, BOP Director, COVID-19 Safeguards (Apr. 21, 2020), *available at* https://www.bop.gov/resources/news/pdfs/202004211_memo_to_inmate_families_and_friends.pdf.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

starting with those incarcerated at facilities with the greatest number of COVID-19 cases.

On April 23, 2020, Andre Matevousian, the Acting Assistant Director of the BOP Correctional Programs Division, and Hugh Hurwitz, the Assistant Director of the BOP Reentry Services Division issued a memorandum to Chief Executive Officers rescinding AG Barr's April 3, 2020 directive, and replacing it with new guidance.[23] The new guidance required for home confinement that people have either (1) served 50 percent or more of their sentences or (2) have 18 months or less remaining in their sentences and have served 25 percent or more of their sentences, in addition to the prior criteria. It noted that these priority factors are subject to deviation and revision at the BOP's discretion.

As of June 30, 2020, the BOP has reported 1,442 COVID-19 positive incarcerated people and 143 staff members. There have been 89 incarcerated persons' deaths.[24] Unfortunately, BOP's reports are likely an undercount.[25]

Despite these harrowing numbers, DOJ and BOP's efforts to protect people living and working under their charge has been sluggish, contradictory, and insufficient to the moment. It has also lacked the transparency required of our democracy.

The Bureau of Justice Statistics (BJS) is responsible for collecting and analyzing data on how the justice systems in the United States operate.[26] BJS not only provides research and data to state and local system actors, but the President, Congress, and other officials as well.[27] The Office of Justice Programming, where BJS is housed, is currently administering $850 million dollars to state and local agencies as a result of the Coronavirus Emergency Supplemental Funding (CESF) Program[28] that was authorized in the Coronavirus Aid, Relief, and Economic Security (CARES) Act.[29] Given that

---

[23] Memorandum to Correctional Program Administrators from David Brewer, Acting Senior Deputy Assistant Director, Furlough and Home Confinement Additional Guidance, *available at* https://prisonology.com/wp-content/uploads/2020/04/COVID-19-Home-confinement-additional-guidance.pdf.

[24] Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus.

[25] Walter Pavlo, Bureau Of Prisons Underreporting COVID-19 Outbreaks In Prison, FORBES (Apr. 1, 2020), *available at* https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#6a3bbff97ba3.

[26] Bureau of Justice Statistics, About the Bureau of Justice Statistics, https://www.bjs.gov/index.cfm?ty=abu.

[27] OJP, Offices, BJS, https://www.ojp.gov/about/offices/bureau-justice-statistics-bjs.

[28] DOJ, Department of Justice Makes $850 Million Available to Help Public Safety Agencies Address COVID-19 Pandemic (Apr. 1, 2020), *available at* https://www.justice.gov/opa/pr/department-justice-makes-850-million-available-help-public-safety-agencies-address-covid-19.

[29] P.L. 116-136.

BJS serves as a resource to federal, state, and local actors - including in its historic analysis of medical problems of those in jails and prisons[30] and age[31] that could assist in identifying vulnerable populations - it is in a position to offer guidance to government at all levels around a response to COVID-19 in jails, prisons, and other detention facilities.

Accordingly, we submit the following requests.

## II. Definitions

The term "DETENTION FACILITIES" means all detention facilities administered by or that contracted with DOJ, BOP, or United States Marshals Service (USMS), or other United States agency including but not limited to pretrial facilities, prisons, BOP-run medical facilities, private contract facilities, and/or state and local facilities that contracted with USMS.

The term "OTHER CUSTODIAL SETTING" means all settings outside Detention Facilities that still constitute DOJ, BOP, or USMS custody, including but not limited to residential reentry centers or halfway houses, home confinement, or hospitalization.

The term "GRIEVANCES" means communications of any kind from people incarcerated in Federal Detention Facilities to the staff of Federal Detention Facilities administered by DOJ, BOP, or USMS or other United States agency including but not limited to administrative remedies (copouts, BP8s, BP9s, BP10s, etc.), Request-to-Staff forms (BP-A0148), other submissions through the Administrative Remedy Program (ARP), and emails filed by people incarcerated in Detention Facilities.

The term "COVID-19" means the novel coronavirus disease that appeared in 2019, including both the novel coronavirus, the disease caused by that virus, and any terms commonly used to describe the current public health situation surrounding the disease. The term "COVID-19" should also be construed to include all the other commonly understood iterations of the term, including but not limited to Covid, COVID, COVID19, COVID2019, SARS-nCoV-2, etc.

The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles,

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[30] Laura M. Maruschak & Marcus Berzofsky, Medical Problems of State and Federal Prisoners and Jail Inmates, BUREAU OF JUSTICE STATISTICS, 2011–12, (Feb. 2015, revised Oct. 2016) , *available at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

[31] E. Ann Carson, Prisoners in 2018, BUREAU OF JUSTICE STATISTICS (Apr. 2020), *available at* https://www.bjs.gov/content/pub/pdf/p18.pdf.

electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voicemail messages.

The term "DOCUMENTS" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of the federal agency or agencies that are the subject of this request and their employees, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

### III. Requested Records

The ACLU seeks the release of all the following information, dated November 1, 2019 to the present unless otherwise noted, in the custody or control of the BJS that are the subject of this request:

1. All communications and documents discussing actions to reduce the risk of COVID-19 for people living and working in Detention Facilities and the likely outcomes of those actions;

2. All communications and documents related to, estimating, or predicting COVID-19 testing, infection, and mortality among people living and working in Detention Facilities;

3. All communications and documents regarding suspected or confirmed COVID-19-related exposures, infections, and deaths among people living and working in Detention Facilities;

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

7

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

4. All communications and documents regarding the risk of spreading COVID-19 to the communities surrounding Detention Facilities via movement of staff, private contractors, visitors, incarcerated people, and others into, out of, and between those facilities;

5. All communications and documents between or among Detention Facility employees, including executive staff, supervisors, and staff, regarding employees' access to hygiene, access to protective equipment, social distancing or lack thereof, or other risks of employee exposure to COVID-19 within Detention Facilities;

6. All communications and documents regarding COVID-19-related Grievances, including but not limited to those discussing access to hygiene, protective equipment, social distancing or lack thereof, or other risks of exposure to COVID-19 within Federal Detention facilities, and including but not limited to communications and documents regarding how Detention Facility employees should respond to Grievances in light of changing USMS, DOJ, and BOP guidance;

7. All communications and documents regarding grants or training to reduce the risk of COVID-19 for people living and working in Detention Facilities;

8. All communications and documents dated January 1, 2016 to the present regarding planned responses in the event of a potential infectious disease outbreak within Detention Facilities, including but not limited to an outbreak of COVID-19;

9. All communications and documents reflecting the models or algorithms used to estimate or predict COVID-19 infection rates and likely mortality throughout the country, including whether any models or algorithms took into account the spread of COVID inside and through Detention Facilities;

10. All communications and documents reflecting BOP's, USMS's and DOJ's assessment of social distancing inside Detention Facilities, including but not limited to discussions regarding the importance of social distancing or the number of incarcerated people who would have to be transferred outside Detention Facilities to ensure social distancing inside them;

11. All communications and documents regarding COVID-19 testing within Detention Facilities by BOP, CDC, USMS, or any other federal agency, including but not limited to the number of tests

8

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

administered to both staff and incarcerated people, the number projected to be administered to both staff and incarcerated people going forward, any plans to publicly report the results of those tests, the frequency with which test results will be reported publicly, and the timeline for administering those tests;

12. All communications and documents regarding Congressional or state-based inquiries into COVID-19-related issues within Detention Facilities, including but not limited to responses provided thereto;

13. All communications and documents containing or regarding guidance on transfer of people incarcerated at Detention Facilities to Other Custodial Settings, or release from Detention Facilities to non-custodial settings, due to COVID-19, including but not limited to:

    a. Determination of which people incarcerated are eligible for and will ultimately be cleared for transfer or release, including but not limited to determination of which people incarcerated are vulnerable to COVID-19 contraction on the basis of health or age;

    b. Creation of and changes to the criteria used to determine which eligible people will ultimately be cleared for transfer or release,[32] including but not limited to Attorney General Barr's March 26 and April 3, 2020 memoranda, and BOP's April 21, 2020 memoranda;

    c. How DOJ, USMS, or BOP determined, quantified, or measured how denying transfer or release based on these criteria would benefit public safety *more than* transferring or releasing incarcerated persons to Other Custodial Settings or non-custodial settings to avoid harm to those persons, to Detention Facility employees, and/or to people living in communities near Detention Facilities;

    d. Guidance provided to United States Attorneys and Assistant United States Attorneys in granting or opposing compassionate release and other motions for reduced sentences based in whole or in part on COVID-19.

---

[32] For example, in BOP's April 10, 2020 Declaration of Juan Segovia, submitted in the Oakdale litigation, Mr. Segovia asserted that an incarcerated person was not required to have completed 50% of their sentence to be considered for transfer. On April 20, 2020, BOP reinstated that criterion.

9

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

### IV. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

A.  *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. *See id.* Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[33]

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 900,000 people. The ACLU also publishes regular updates and alerts via email to over 3.1 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 4 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

---

[33] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

10

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[34] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[35]

---

[34] *See, e.g.*, Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://www.aclu.org/press-releases/federal-court-permanently-blocks-billions-dollars-border-wall-construction; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://www.aclu.org/press-releases/new-documents-reveal-nsa-improperly-collected-americans-call-records-yet-again; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://www.aclu.org/press-releases/aclu-and-center-media-justice-sue-fbi-records-surveillance-black-activists; Press Release, ACLU, ACLU, Privacy International Demand Government Disclose Nature and Extent of Hacking Activities (Dec. 21, 2018), https://www.aclu.org/press-releases/aclu-privacy-international-demand-government-disclose-nature-and-extent-hacking; Press Release, ACLU, New Documents Reveal Government Plans to Spy on Keystone XL Protesters (Sept. 4, 2018), https://www.aclu.org/news/new-documents-reveal-government-plans-spy-keystone-xl-protesters; Press Release, ACLU, ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody (May 22, 2018), https://www.aclu.org/news/aclu-obtains-documents-showing-widespread-abuse-child-immigrants-us-custody; Press Release, ACLU, ACLU Demands CIA Records on Campaign Supporting Haspel Nomination (May 4, 2018), https://www.aclu.org/news/aclu-demands-cia-records-campaign-supporting-haspel-nomination; Press Release, ACLU, Advocates File FOIA Request For ICE Documents on Detention of Pregnant Women (May 3, 2018), https://www.aclu.org/news/advocates-file-foia-request-ice-documents-detention-pregnant-women; Press Release, ACLU, Civil Rights Organizations Demand Police Reform Documents from Justice Department (Jan. 4, 2018), https://www.aclu.org/news/civil-rights-organizations-demand-police-reform-documents-justice-department; Press Release, ACLU, ACLU Files Lawsuits Demanding Local Documents on Implementation of Muslim Ban (Apr. 12, 2017), https://www.aclu.org/news/aclu-files-lawsuits-demanding-local-documents-implementation-trump-muslim-ban; Press Release, ACLU, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, ACLU, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, ACLU, ACLU Sues for Bureau of Prisons Documents on Approval of CIA Torture Site (Apr. 14 2016), https://www.aclu.org/news/aclu-sues-bureau-prisons-documents-approval-cia-torture-site.

[35] *See, e.g.*, Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times, June 26, 2019, https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU attorney Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill, Mar. 21, 2019, https://thehill.com/policy/national-security/fbi/435143-fbi-sued-over-black-activist-surveillance-records (quoting ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program (quoting ACLU attorney Hugh Handeyside); Larry Neumeister, *Judge Scolds Government over Iraq Detainee Abuse Pictures*, The Associated Press, Jan. 18, 2017, https://www.apnews.com/865c32eebf4d457499c017eb837b34dc (quoting ACLU project director Hina Shamsi); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016,

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests. [36] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, including analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

http://abcn.ws/2jy40d3 (quoting ACLU attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nathan Freed Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[36] *See, e.g.*, ACLU, *Bad Trip: Debunking the TSA's 'Behavior Detection' Program* (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, *Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative* (2016), https://www.aclu.org/report/leaving-girls-behind; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333.

issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.[37]

The ACLU website includes many features on information obtained through the FOIA. The ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of its contents relating to government policies on rendition, detention, and interrogation.[38] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.[39]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the Requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

---

[37] *See, e.g., ACLU v. ODNI—*FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act, ACLU Case Page, https://www.aclu.org/cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act; *ACLU v. DOJ—*FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media; *ACLU v. DOJ—*FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties; Executive Order 12,333—FOIA Lawsuit, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit; ACLU Motions Requesting Public Access to FISA Court Rulings on Government Surveillance, ACLU Case Page, https://www.aclu.org/cases/aclu-motions-requesting-public-access-fisa-court-rulings-government-surveillance; *ACLU v. DOJ—*FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-demanding-olc-opinion-common-commercial-service-agreements; FOIA Request for Justice Department Policy Memos on GPS Location Tracking, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking; Florida Stingray FOIA, ACLU Case Page, https://www.aclu.org/cases/florida-stingray-foia; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida,* (Feb. 22, 2015) https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida?redirect=blog/national-security-technology-and-liberty/aclu-obtained-documents-reveal-breadth-secretive-sting.

[38] *The Torture Database*, ACLU Database, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[39] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf; *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU (Nov. 29, 2010), https://www.aclu.org/files/pdfs/natsec/faafoia_20101129/20101129Summary.pdf; *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

> B.   *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, they pertain to the Trump Administration's response to the risk of COVID-19 infecting and killing people living and working in the detention facilities it administers throughout the United States. As discussed in Part I, *supra*, this issue is the subject of widespread public controversy and media attention. The records sought relate to a matter of widespread and exceptional media interest in the COVID pandemic.

Further underscoring the urgency of informing the public about the issue in this Request is the strong media interest in what little has been revealed publicly about that conduct. Given this media interest and the lack of public information about the basis and need for the information at issue, there is an urgent need to inform the public about the response to the COVID pandemic inside of federal detention facilities. Expedited processing is therefore appropriate under 5 U.S.C. § 552(a)(6)(E).

### V. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

> A.   *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, this Request concerns the response to the COVID pandemic inside of federal detention facilities. Insufficient information is publicly available regarding the issue in this Request, so the records sought are certain to contribute significantly to the public's understanding of the response to the COVID pandemic inside of federal detention facilities, with regarding to people living and working in these facilities, and those living in the surrounding communities.

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

14

FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.   *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

(D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[40]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[41] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

\* \* \*

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Taylor Pendergrass

---

[40] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; s*ee also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[41] The ACLU regularly receives FOIA fee waivers from federal agencies. For example, in June 2018, the U.S. Citizenship and Immigration Services granted a fee-waiver request regarding a FOIA request for documents relating to the use of social media surveillance. In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In June 2017, the Department of Defense granted a fee-waiver request regarding a FOIA request for records pertaining to the authorities approved by President Trump in March 2017 which allowed U.S. involvement in Somalia. In June 2017, the Department of Defense, the CIA, and the Office of Inspector General granted fee-wavier requests regarding a FOIA request for records pertaining to U.S. involvement in the torture of detainees in prisons in Yemen, Eritrea, and aboard Yemeni or Emirati naval vessels. In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, the CIA and the Department of State granted fee-waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In June 2016, the Office of the Director of National Intelligence granted a fee-waiver request regarding a FOIA request related to policies and communications with social media companies' removal of "extremist" content. In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the Department of Justice for documents related to Countering Violent Extremism Programs.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

American Civil Liberties Union
125 Broad Street, 18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
COVID_FOIA@aclu.org

    I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Sincerely,

Taylor Pendergrass, Esq.
Somil Trivedi, Esq.
Nicole Fortier, Esq
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
Cell: 303-817-9502
COVID_FOIA@aclu.org

**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**