## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION,

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

     *Plaintiffs*,

       v.

FEDERAL BUREAU OF PRISONS,

U.S. DEPARTMENT OF JUSTICE,

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

     *Defendants*.

No. 20-cv-3031

## PLAINTIFFS' MOTION TO COMPEL
## <u>A VOLUME ESTIMATE AND EXPEDITED PROCESSING</u>

This Freedom of Information Act case is about the federal government's disastrous handling of the COVID-19 pandemic in prisons, and the pandemic's devastating impact on prisoners, prison staff, and surrounding communities. Plaintiffs' expedited FOIA request to the Federal Bureau of Prisons has been pending for one full year, and this lawsuit has been pending for six months. But the BOP has still not even disclosed how many potentially responsive records it has, repeatedly failing to meet its own deadlines to provide this information. Nor has the BOP agreed to review those records at a pace consistent with the urgency of Plaintiffs' expedited request.

Time is of the essence.  The pandemic is an ongoing public health emergency that continues to ravage the incarcerated population.  Plaintiffs filed this lawsuit because the BOP has resisted congressional oversight and attracted bipartisan criticism for withholding critical information about its handling of the pandemic, including information about its inexplicable reluctance to release vulnerable inmates.  Every additional day of delay threatens more infections and deaths in prisons and surrounding communities.

Yet despite Plaintiffs' repeated inquiries over the past four months, the BOP has been unable or unwilling to provide basic information about its search for records responsive to Plaintiffs' expedited FOIA request.  The BOP has not provided an estimate of potentially responsive records after de-duplication.  It has missed its own deadline to provide this information, declining repeated inquiries by Plaintiffs over the course of four months, most recently blaming "funding and contracting issues."  And the BOP will not commit to processing more than 500 pages each month.

This Court should end the BOP's stonewalling.  In light of the BOP's inability or unwillingness to meet its obligations, Plaintiffs respectfully request that the Court order BOP to (1) provide an estimated volume of potentially responsive records by May 14, 2021, and (2) process at least 2,000 pages in May and June, and then at least 1,000 pages per month thereafter until processing is complete.  A proposed order is attached.

## BACKGROUND

On April 29, 2020, Plaintiffs submitted a FOIA request to the BOP concerning the federal government's handling of the COVID-19 pandemic in prisons.  The BOP granted expedited processing on April 29, 2020.  Compl. ¶ 26.  But in the ensuing months, the BOP did not

produce any records in response to Plaintiffs' expedited request.  On October 21, 2020, Plaintiffs filed this lawsuit.[1]

One year after Plaintiffs submitted their expedited request, the situation remains dire.  For example, a recent New York Times report revealed that "[i]n federal facilities, at least 39 percent of prisoners are known to have been infected," ***more than four times as high*** as the general population.[2]  The federal government's treatment of inmates and staff in its prisons continues to receive scathing bipartisan criticism.  *See* Compl. ¶¶ 6, 10 (citing examples of congressional criticism).  On April 15, 2021, BOP Director Michael Carvajal faced criticism from the Senate Judiciary Committee, where "committee members have been frustrated with BOP's limited efforts to move vulnerable people from prisons to home confinement."[3]  That hearing followed a March 18, 2021 House committee hearing in which members of both parties criticized the BOP for its persistent lack of transparency and expressed concern that less than half of the BOP's workforce has accepted vaccines, creating a real risk that the coronavirus will continue to spread within BOP facilities even after the general population achieves herd immunity.[4]

---

[1] This case also involves several other FOIA requests submitted by Plaintiffs to components of the Department of Justice and the Department of Health and Human Services in July 2020.  *See* Compl. ¶¶ 29-39.  Those requests are not the subject of this Motion.

[2] *Incarcerated and Infected: How the Virus Tore Through the U.S. Prison System*, N.Y. Times (Apr. 10, 2021), https://www.nytimes.com/interactive/2021/04/10/us/covid-prison-outbreak.html.

[3] Betsy Woodruff Swan, *Prisons Chief Set to Face Congressional Grilling*, Politico (Apr. 8, 2021), https://www.politico.com/news/2021/04/08/prisons-chief-congressional-hearing-480339.

[4] House Appropriations Subcommittee Hearing, *COVID Outbreaks & Management Challenges: Evaluating the Federal Bureau of Prisons' Pandemic Response and the Way Forward* (Mar. 18, 2021), https://www.youtube.com/watch?v=qyDNeKF7vuE; Nicole Ogrysko, *Lawmakers alarmed by high COVID-19 vaccine refusal rate at BOP workforce*, Federal News Network (Mar. 22, 2021), https://federalnewsnetwork.com/workforce/2021/03/lawmakers-alarmed-by-high-covid-19-vaccine-refusal-rate-at-bop-workforce/.

The BOP has continued its pattern of delay and stonewalling in this case.  Shortly after the government filed its answer, the parties began discussing the BOP's search for responsive documents.  On January 22, 2021, the BOP proposed a search drawn from a different FOIA case pending before this Court.  Ex. A (Jan. 22, 2021 email from K. Molen); Compl. ¶¶ 45-46, *American Oversight v. Dep't of Homeland Sec.*, 20-cv-1367-RCL (May 21, 2020).  Plaintiffs then provided search terms and custodians tailored to their FOIA request.  Ex. B (Jan. 29, 2021 email from S. Kumar).  Plaintiffs also asked whether the BOP "can have an estimated volume next week."  *Id.*  Counsel for BOP responded that she was "waiting to hear back from agency counsel."  Ex. C (Jan. 31, 2021 email from K. Molen).  Nine days later, Plaintiffs' counsel followed up and asked "whether the BOP agrees to our January 29 search proposal and when we can expect an estimate of potentially responsive records."  Ex. D (Feb. 9, 2021 email from S. Kumar).

After the BOP agreed to search parameters in February, the agency asserted that Plaintiffs' search returned approximately 237,000 responsive records.  But this figure was highly inflated because, as agency counsel noted, it had not been de-duplicated.  The BOP submitted the results for de-duplication on March 9, 2021, and represented to both Plaintiffs and this Court that de-duplication "usually takes approximately two weeks."  Dkt. 19 at 4.  But notwithstanding its representation to the Court, more than a month has passed, and the BOP has still not provided a de-duplicated volume estimate of potentially responsive records.

On April 6, 2021, after additional inquiries from Plaintiffs' counsel, the BOP stated for the first time that "deduping cannot start ***until June 1st*** due to funding and contracting issues."  Ex. E (Apr. 6, 2021 email from K. Molen) (emphasis added).  The BOP had never raised these

issues before, and offered no proposed workaround to meet the timelines to which it had previously committed.

Separately, despite the urgency of Plaintiffs' expedited request, the BOP has stated repeatedly that it will only agree to process 500 pages per month in this case.  Dkt. 17 at 5.  In the April 16, 2021 joint status report, the BOP reiterated its refusal to process more than 500 pages per month.  Dkt. 21 at 3-4.

To date, the BOP has not even come close to hitting a 500-page processing rate.  On April 2, 2021, the BOP released 143 pages related to congressional inquiries, which mainly consisted of publicly available letters from members of Congress.  The April 2 release occurred more than weeks later than the date BOP represented to the Court.  Dkt. 19 at 4 ("BOP . . . anticipates making its first release of non-exempt information by March 16, 2021.").  Despite the fact that Plaintiffs filed this lawsuit *six months ago*, to demand a response to a request that the BOP expedited *nearly a year ago*, the BOP has only produced 143 total pages.

## STATEMENT PURSUANT TO LCvR 7(m)

Plaintiffs' counsel discussed this Motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and to narrow the areas of disagreement.  The BOP has not provided a de-duplicated volume estimate and has indicated that de-duplication will not begin until June 2021.  The BOP will not agree to process more than 500 pages per month.  The BOP opposes the Motion.

## ARGUMENT

The BOP has a statutory obligation to make responsive records "promptly available," which "typically would mean within days or a few weeks of a 'determination,' not months or years."  *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) (citing 5 U.S.C. § 552(a)(3)(A)).  Because "unreasonable delays in

5

disclosing non-exempt documents violate the intent and purpose of the FOIA," courts "have the authority to impose concrete deadlines on agencies that delay the processing of requests meriting expedition." *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp.2d 30, 35, 38 (D.D.C. 2006) (quotations omitted).

## I.    The BOP Should Identify the Estimated Volume of Potentially Responsive Records.

Plaintiffs and the BOP need a de-duplicated volume estimate to set a processing and production schedule.  Yet one year after Plaintiffs' filed their expedited request, the BOP has failed to provide such a volume estimate, and it now seeks *six more weeks* to even begin addressing the question.  But the BOP's vague, eleventh-hour assertion of "funding and contracting issues" cannot excuse this delay.  This Court should order the BOP to provide an estimated volume of potentially responsive records by no later than May 14, 2021.

Identifying the volume of potentially responsive records is a basic and necessary first step that will serve both parties.  *See, e.g., In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2009 WL 3443563, at *10 (D.D.C. Oct. 23, 2009) (ordering defendants to identify "a reasonable estimate of the number of hard copy documents" to "keep the initial production on schedule"). Both parties need to know the de-duplicated volume to determine how the search and review process can proceed most efficiently.  An accurate volume estimate may inform whether the parties should revise the search parameters or prioritize certain custodians in the search.   BOP has failed to provide such an estimate to date, undermining Plaintiffs' right to receive responsive records promptly and the BOP's ability to complete its search efficiently.  The parties cannot reasonably negotiate and focus the scope of the search parameters without knowing this information.  Plaintiffs first asked for a volume estimate in January.  After suggesting it would provide an estimate in March, the BOP has now asserted that it will not even begin the de-duplication process until June.  Ex. E (Apr. 6, 2021 email from K. Molen).

Plaintiffs have worked diligently to resolve this issue without the Court's intervention, but the BOP has proven unable or unwilling to provide the necessary information in a timely manner.  Ordering a volume estimate is well within the Court's broad "authority to impose concrete deadlines on agencies that delay the processing of requests meriting expedition." *Elec. Privacy Info. Ctr.*, 416 F. Supp.2d at 38; *Citizens for Responsibility & Ethics in Washington v.  v. U.S. Dep't of Justice*, 846 F.3d 1235, 1241-42 (D.C. Cir. 2017) (courts have "broad equitable authority" under FOIA, and FOIA does not "limit the inherent powers of an equity court"). Plaintiffs respectfully request that the Court order the BOP to provide a de-duplicated volume estimate by May 14, 2021.

## II.    The BOP Should Process At Least 2,000 Pages Per Month in May and June, and then 1,000 Pages Per Month Thereafter.

Courts routinely order agencies to process thousands of pages per month where, as here, the requests concerned matters of national importance, ongoing emergencies, and front-page news.  *See, e.g., Seavey v. Dep't of Justice*, 266 F. Supp.3d 241, 248 (D.D.C. 2017) (2,850 pages per month); *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (5,000 pages per month); *Elec. Privacy Info. Ctr.*, 416 F. Supp.2d at 38-40 (collecting cases setting rates of 1500 pages every 15 days, 6000 pages within 60 days, and the "vast majority" of 7500 pages within 32 days).  Notably, courts have ordered expedited processing rates in FOIA cases concerning detention policy during the pandemic.  In a recent case involving a request for records about COVID-19 outbreaks in two immigration detention facilities, the court ordered the Department of Homeland Security to process 1,000 pages per month.  *Al Otro Lado v. DHS*, 20-cv-5191, Dkt. 35 (C.D. Cal. Sept. 23, 2020) (order); *see also ACLU v. ICE*, 20-cv-3204 (D.D.C. Jan. 22, 2021) (order) (750 pages per month).  And an accelerated processing rate is especially warranted where, as here, an expedited FOIA request "has been pending for nearly" one year, "[a]n

7

incredibly small amount of pages has been released to Plaintiff," and "the record shows that Defendant's efforts have been unnecessarily slow and inefficient." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 2005 U.S. Dist. LEXIS 40318, at *4 (D.D.C. Nov. 16, 2005) ("Defendant shall complete the processing of 1500 pages every 15 calendar days").

Here, Plaintiffs respectfully request that the BOP process at least 2,000 pages per month in May and June, to mitigate the harm from its year of delay, and then at least 1,000 pages per month thereafter.  A heightened processing rate is appropriate in this case.  Plaintiffs' requests seek information about an ongoing public health emergency, caused by a deadly virus to which people in prisons are uniquely susceptible. *See Open Society Justice Initiative v. CIA*, 399 F. Supp.3d 161, 167 (S.D.N.Y. 2019) (ordering agencies to process 5,000 pages per month where requests concerned "a matter of exceptional public importance and obvious and unusual time-sensitivity" that was "front-page news" when plaintiff "lodged its FOIA requests."). ***One full year*** after the Plaintiffs submitted their expedited request, the BOP has yet to show any urgency in its search. *See Elec. Privacy Info. Ctr.*, 2005 U.S. Dist. LEXIS 40318, at *4 (ordering expedited processing based on "nearly eight months" of delay).  The initial 2,000-page per month processing rate is warranted because if the BOP had acted with the necessary urgency after the government filed its answer, it would have processed at least 2,000 pages across February, March, and April.  Instead, the BOP belatedly released a mere 143 pages in April. Plaintiffs filed this lawsuit because "the BOP has concealed from public view critical information about its management of the pandemic and its efforts to protect the prison population."  Compl. ¶ 10.  Members of Congress from both parties have criticized the BOP for its lack of transparency and resistance to congressional oversight. *Id.*  This Court should not allow the BOP's stonewalling to continue.

Nor can the BOP credibly assert that the requested processing rate would be unduly burdensome.  The BOP has already agreed that Plaintiffs' request is entitled to expedited processing.  But in the year since Plaintiffs filed their request, BOP has released just 143 pages. Over the past four months, BOP has repeatedly failed to meet its own deadlines—including with respect to the 143 pages that constitute its meager production to date.  The BOP has shown that it cannot be trusted to hit even its self-imposed deadlines, and requires a Court order to ensure that more time is not lost.  In similar cases concerning expedited requests, courts have not hesitated to order comparable rates in excess of 1,000 pages per month.  *See, e.g.*, *Al Otro Lado*, 20-cv-5191; *Open Society Justice Initiative*, 399 F. Supp.3d at 167.[5]  This Court should do so here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court require the BOP to disclose the estimated volume of de-deduplicated potentially responsive records by May 14, 2021.  Plaintiffs further request that the Court order the BOP to process at least 2,000 pages in May and June 2021, and then 1,000 pages per month thereafter until processing is complete.  A proposed order is attached.

DATED: April 21, 2021

---

[5] The BOP cannot lean on its other pending FOIA requests to avoid promptly producing records in this case.  Where the public interest in disclosure of responsive records is high, that interest "outweighs any possible harm to other requesters that may result from accelerated processing of this request."  *American Immigration Council v. DHS*, 470 F. Supp.3d 32, 39 (D.D.C. 2020); *Wash. Post v. DHS*, 459 F. Supp.2d 61, 76 (D.D.C. 2006) ("[P]ursuant to the statutory provision mandating expedited treatment, the public's interest in expedited processing of the plaintiff's request outweighs any general interest that it has in first-in-first-out processing of FOIA requests.").

Respectfully submitted,


/s/ Suraj Kumar
Thomas G. Hentoff (D.C. No. 438394)
Nicholas G. Gamse (D.C. No. 1018297)
Suraj Kumar (D.C. No. 1632752)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
thentoff@wc.com
ngamse@wc.com
skumar@wc.com

Somil Trivedi (D.C. No. 1617967)
American Civil Liberties Union Foundation
915 Fifteenth Street, N.W.
Washington, DC 20005
(202) 715-0802
strivedi@aclu.org

Ezekiel R. Edwards (admitted *pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street – 18th Floor
New York, NY 10004
(212) 549-2610
eedwards@aclu.org

Arthur B. Spitzer (D.C. No. 235960)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, NW – 2nd floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

David L. Sobel (D.C. No. 360418)
5335 Wisconsin Avenue, NW
Suite 640
Washington, DC 20015
(202) 246-6180
sobel@att.net

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Suraj Kumar, counsel for Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation, certify that, on April 21, 2021, a copy of this Motion was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

/s/ Suraj Kumar
Suraj Kumar