UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>FEDERAL BUREAU OF PRISONS, *et al.*,<br><br>  Defendants. | Civil Action No. 20-3031 (RCL) |

**FEDERAL BUREAU OF PRISONS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL A VOLUME ESTIMATE AND EXPEDITED PROCESSING**

Defendant Federal Bureau of Prisons ("BOP"), by and through undersigned counsel, respectfully submits the instant opposition to Plaintiffs' Motion to Compel a Volume Estimate and Expedited Processing, wherein Plaintiffs specifically request that the Court order BOP to disclose the estimated volume of de-duplicated potentially responsive records by May 14, 2021, and further request that BOP be ordered to process at least 2,000 pages in May and June 2021, and then 1,000 pages per month thereafter until processing is complete. *See* ECF No. 23. BOP has been pursuing a workaround solution to the de-duplication of its records, and it recently provided Plaintiffs with a deduplication report for the first three custodians which are being prioritized pursuant to Plaintiffs' request. This deduplication report demonstrates that, with respect to these three custodians, the universe of potentially responsive records is not significantly reduced once deduplication occurs. As to BOP's monthly processing rate, BOP respectfully requests that the Court adopt a processing rate of 500 pages per month, a common processing rate for FOIA cases in this District. In support of its Opposition, BOP submits the declaration of Eugene E. Baime ("Baime Decl.").

## BACKGROUND INFORMATION

On April 29, 2020, and July 1, 2020, Plaintiffs submitted eight separate Freedom of Information Act ("FOIA") requests: six requests to Department of Justice's components and programs—BOP; the Bureau of Justice Statistics, Bureau of Justice Assistance, National Criminal Justice Reference Center, Office of Justice Programs, Office of Legal Counsel; one request to the Department of Justice's Mail Referral Unit; and one request to the Department of Health and Human Services, more specifically the Centers for Disease Control ("CDC"). *See* Compl. ¶ 22. Plaintiffs filed this FOIA lawsuit on October 21, 2020. *See* ECF No. 1. The instant motion pertains solely to the FOIA request submitted to BOP, wherein Plaintiffs seek the following information:

1. All communications and documents discussing actions to address the risk of COVID-19 for people living and working in Detention Facilities and the likely outcomes of those actions;

2. All communications and documents related to estimating or predicting COVID-19 testing capacity, infection spread, and likely mortality among people living and working in Detention Facilities;

3. All communications and documents regarding suspected or confirmed COVID-19-related exposures, infections, and deaths among individuals living and working in Detention Facilities;

4. All communications and documents regarding the risk of spreading COVID-19 to the communities surrounding Detention Facilities via movement of staff, private contractors, visitors, incarcerated people, and others into, out of, and between those facilities;

5. All communications and documents between or among Detention Facility employees, including executive staff, supervisors, and staff, regarding employees' access to hygiene, access to protective equipment, social distancing or lack thereof, or other risks of employee exposure to COVID-19 within Detention Facilities;

6. All communications and documents regarding COVID-19-related Grievances, including but not limited to those discussing access to hygiene, protective equipment, social distancing or lack thereof, or other risks of exposure to COVID-19 within Federal Detention facilities, and including

but not limited to communications and documents regarding how Detention Facility employees should respond to Grievances in light of changing DOJ and BOP guidance;

7. All communications and documents dated January 1, 2016 to the present regarding action plans or other responses to be taken in the event of a potential infectious disease outbreak within Detention Facilities, including but not limited to an outbreak like that of COVID-19;

8. All communications and documents reflecting the models or algorithms used to estimate or predict COVID-19 infection rates and likely mortality throughout the country, including whether any models or algorithms took into account the spread of COVID inside and through Detention Facilities;

9. All communications and documents regarding COVID-19 testing within Detention Facilities, including but not limited to the number of tests administered to both staff and incarcerated people, the number projected to be administered to both staff and incarcerated people, plans to publicly report the results of those tests, the frequency with which test results will be reported publicly, and the timeline for administering those tests;

10. All communications and documents regarding Congressional or state-based inquiries into COVID-19-related issues within Detention Facilities, including but not limited to responses provided thereto;

11. All communications and documents containing or regarding guidance on transfer of people incarcerated at Detention Facilities to Other Custodial Settings, or release from Detention Facilities to noncustodial settings, due to COVID-19, including but not limited to:

    a. Determination of which people incarcerated are eligible for and will ultimately be cleared for transfer or release, including but not limited to determination of which people incarcerated are vulnerable to COVID-19 contraction on the basis of health or age;

    b. Creation of and changes to the criteria used to determine which eligible people will ultimately be cleared for transfer or release, including but not limited to Attorney General Barr's March 26 and April 3, 2020 memoranda, and BOP's April 21, 2020 memoranda;

    c. How DOJ or BOP determined, quantified, or measured how denying transfer or release based on these criteria would benefit public safety more than transferring or releasing incarcerated persons to Other Custodial Settings or non-custodial settings to avoid harm to those persons, to Detention Facility employees, and/or to people living in communities near Detention Facilities;

> d. Guidance provided to United States Attorneys and Assistant United States Attorneys in granting or opposing compassionate release and other motions for reduced sentences based in whole or in part on COVID-19.

*See* ECF No. 1-1, Ex. A – FOIA Request submitted to BOP on April 29, 2020.

With respect to certain of the documents sought by Plaintiffs, BOP informed Plaintiffs that some responsive information can be found on BOP's COVID-19 webpage available at: https://www.bop.gov/coronavirus/. For example, BOP provided a detailed breakdown of COVID-19 cases for each BOP facility, including: the number of inmates who have tested positive; the number of staff who have tested positive; the number of inmate deaths; the number of staff deaths; the number of inmates who have recovered; and the number of staff who has recovered. These numbers are updated each weekday. As of May 4, 2021, BOP's COVID-19 webpage indicates that BOP houses 127,655 federal inmates, and the BOP staff component is approximately 36,000. Currently, 46,290 inmates and 6,745 staff have recovered from COVID-19. There have been 234 federal inmate deaths and 4 BOP staff member deaths attributed to COVID-19; of the inmate deaths, 5 occurred while on home confinement. This information appears to provide some information directly responsive to subpart No. 3 of Plaintiffs' request.

The BOP's webpage provides data pertaining to the number of COVID-19 tests administered per facility; this information appears to provide some information directly responsive to subpart no. 9 of Plaintiffs' request. BOP's COVID-19 webpage also provides the status of the vaccine implementation for each facility; the information is updated each weekday. The numbers provided by BOP reflect staff and inmates who have completed both doses (fully inoculated), however BOP staff who received their vaccination in the community rather than a BOP facility are not reflected on this data. Finally, BOP's webpage also provides information regarding COVID-19 Home Confinement, including the eligibility requirements. *See*

https://www.bop.gov/coronavirus/faq.jsp. BOP indicates that it currently has 7,276 inmates on home confinement. The total number of inmates placed in home confinement from March 26, 2020, to the present, including inmates who have completed service of their sentence is 24,971. The information available in this section of the COVID-19 webpage appears to provide some information directly responsive to subpart no. 11 of Plaintiffs' request.

Contrary to Plaintiffs' assertion, BOP has been actively working to process Plaintiffs' FOIA request. On January 21, 2021, the parties participated in a conference call. During this call, BOP indicated that Plaintiffs' FOIA request was overly broad as each subpart of the request seeks "all communications." On January 22, 2021, BOP provided a search proposal which included 18 custodians and a list of search terms. *See* ECF No. 23-2, Ex. A. On January 29, 2021, Plaintiffs' provided a counterproposal which included a list of search terms and increased the number of custodians to be searched to 29. *See* ECF No. 23-3, Ex. B at 5-7. BOP agreed to the search parameters proposed by Plaintiffs and conducted a search for potentially responsive records; the search located 362,231 potentially responsive records. *See* ECF No. 17, Joint Status Report, Feb. 16, 2021.

Subsequently Plaintiffs' counsel requested a hit report and/or a counterproposal from BOP. *See* Ex. 1 (Feb. 16, 2021, email from N. Gamse). On February 24, 2021, BOP provided a counterproposal which generated 117,000 results. *See* Ex. 1 (Feb. 24, 2021, email from K. Molen). On February 25, 2021, Plaintiffs' counsel requested that BOP run this search but to include "virus" and "pandemic" as modifiers. *See* Ex. 2 (Mar. 4, 2021, email from K. Molen). On March 4, 2021, BOP informed Plaintiffs' counsel that, including these two additional terms as modifiers, increased the search results by an additional 120,000 results. *Id.* On March 8, 2021, Plaintiffs' counsel indicated that they would agree to the search including "virus" and "pandemic"

knowing that the inclusion of these terms would increase the number of potentially responsive records to 237,000. *See* Ex. 2 (Mar. 8, 2021, email from S. Kumar). On March 16, 2021, BOP informed the Court that the "deduplication process was initiated on March 9, 2021, and usually takes approximately two weeks."[1] ECF No. 19, Joint Status Report, Mar. 16, 2021.

On April 2, 2021, BOP released 143 pages of non-exempt information pertaining to Congressional inquiries, in other words records responsive to subpart no. 10 of Plaintiffs' request.[2] On April 6, 2021, BOP informed Plaintiffs' counsel that "deduping cannot start until June 1st due to funding and contracting issues." *See* Ex. 3 (Apr. 6, 2021 email from K. Molen) Nonetheless, BOP indicated to Plaintiffs' counsel that it had begun its responsiveness review and that pages deemed responsive would be processed for release; BOP indicated that it anticipates making its first rolling release concerning the responsiveness review on May 6, 2021. *Id.* On April 14, 2021, Plaintiffs' counsel requested that, for purposes of the responsiveness review, that BOP prioritize the records of BOP Director Michael Carvajal, and identify "1-2 BOP officials who were most closely involved in the release or home-confinement transfer of inmates, including creating internal criteria for both." *See* Ex. 3 (Apr. 14, 2021, email from S. Kumar).

On April 15, 2021, BOP identified two BOP officials Andre Matevousian, Acting Assistant Director—Correctional Programs Division, and Hugh Hurwitz, Assistant Director—Administration. *See* Ex. 3 (Apr. 15, 2021, email from K. Molen). On April 16, 2021, BOP

---

[1] BOP informed Plaintiffs' counsel that the deduplication process required BOP sending the records to a contractor and that there is an associated fee for BOP. *See* Ex. 1 (Feb. 24, 2021, email from K. Molen)

[2] Plaintiffs characterize this release as consisting mainly of publicly available letters from members of Congress. Pl's Mot. at 5. BOP notes that of the 143 pages released to Plaintiffs, 73 pages (20 letters) consisted of letters from members of Congress, the remaining 70 pages (26 letters) consisted of BOP's responses to members of Congress. Baime Decl. ¶ 8.

informed the Court that it had begun processing the records for responsiveness and anticipates making its next release on May 6, 2021, at a processing rate of 500 pages per month.  ECF No. 21, Joint Status Report, Apr. 16, 2021.

## ARGUMENT

Contrary to Plaintiffs' assertion, BOP has identified the estimated volume of potentially responsive records.  Moreover, far from stonewalling, BOP has actively engaged Plaintiffs to identify a path forward in response to Plaintiffs' broadly worded FOIA request.  BOP respectfully requests that the Court adopt its processing rate of 500 pages per month, which is a common processing rate for FOIA cases in this District.

As an initial matter, Plaintiffs' sweeping request to BOP arguably fails to reasonably describe the records sought.  Indeed, taken literally, Plaintiffs seek nearly every scrap of paper in BOP's possession that mentions or regards COVID-19.  Many courts have concluded that FOIA requests such as this when phrased as seeking all documents "regarding" or "relating to" a subject matter do not satisfy a requester's threshold obligation to present a legally sufficient FOIA request. *See, e.g., Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (Bates, J.) (collecting, cases, "Broad, sweeping requests lacking specificity are not sufficient.  Consequently, courts have found that FOIA requests for *all* documents concerning a requester are too broad.") (emphasis in original; internal citation omitted). "The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989), *aff'd*, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990).  While, as noted above, BOP continues to engage with Plaintiffs in good faith to process their request, BOP reserves it rights to challenge the request should this matter proceed to active litigation.  Moreover, for purposes here, the Court should not allow

Plaintiffs to propound a broad, sweeping FOIA request and then complain that the time the agency needs to process it is too long.

**I.     BOP has identified the estimated volume of potentially responsive records.**

BOP has repeatedly provided an estimated volume of potentially responsive records; on February 16, 2021, BOP indicated that Plaintiffs' counterproposal of January 29, 2021, yielded 362,231 of potentially responsive records.  *See* ECF No. 17, Joint Status Report, Feb. 16, 2021. Then, on February 24, 2021, BOP offered a counterproposal which generated 117,000 of potentially responsive records.  *See* Ex. 1 (Feb. 24, 2021, email from K. Molen).  On February 25, 2021, Plaintiffs' counsel requested that BOP run this search but to include "virus" and "pandemic" as modifiers.  *See* Ex. 2 (Mar. 4, 2021, email from K. Molen).  On March 4, 2021, BOP informed Plaintiffs' counsel that, including these two additional terms as modifiers, increased the search results by an additional 120,000 results, bringing the total number to 237,000 of potentially responsive records.  *See* Ex. 2 (Mar. 4, 2021, email from K. Molen).    Nothing within FOIA requires BOP to provide Plaintiffs with deduplication numbers and reports.

However, since the parties' last Joint Status Report, with the assistance of a separate Department of Justice Office, BOP has been able to deduplicate the records of the three custodians that Plaintiffs wish to prioritize — Michael Carvajal; Andre Matevousian, and Hugh Hurwitz. Plaintiffs' counsels were provided with a deduplication report for these three custodians.  Baime Decl. ¶ 7, Ex. 4.  The deduplication report indicates that the total number of duplicates for these three custodians combined is less than 10%.  *Id.*  In other words, the total number of records associated with these three custodians is 25,454, of which 2,130 are duplicates.  *Id.*  These numbers, at least for these three custodians, directly contradict Plaintiffs' position that BOP's estimate of 237,000 is "highly inflated" as the records have yet to be deduplicated.  Pl's Mot. at

4.  BOP will continue its review and processing of the three prioritized custodians at a processing rate of 500 pages per month and will provide its first rolling release on May 6, 2021. BOP further notes that it remains open and willing to discuss with Plaintiffs options to narrow the universe of potentially responsive records.

**II.     BOP requests that the Court adopt its processing rate of 500 pages per month**

BOP respectfully requests that the Court adopt a processing rate of 500 pages per month, which is a common processing rate for FOIA cases in this District. *See, e.g.,* Min. Order, *Martinez v. Dep't of Just.*, Civ. A. No. 20-0251 (RDM) (D.D.C. entered June 5, 2020) (ordering 500 page per month processing rate); Min. Order, *Reporters Comm. for Freedom of the Press v. CBP,* Civ. A. No. 19-2401 (CRC) (D.D.C. entered Apr. 3, 2020) (ordering 500 page per month processing rate); Min. Order, *S. Utah Wilderness Alliance v. Dep't of Interior*, Civ. A. No. 19-2203 (TNM) (D.D.C. entered Nov. 25, 2019) (ordering 500 page per month processing rate); Min. Order, *Ctr. for Reproductive Rights v. Dep't of State,* Civ. A. No. 18-2217 (DLF) (D.D.C. entered Apr. 3, 2019) (denying plaintiff's request for a 1,000 page per month processing rate; ordering a 300 page per month processing rate); Min. Order, *Ctr. for Bio. Diversity v. Dep't of Interior*, Civ. A. No. 17-1595 (RC) (D.D.C. entered July 23, 2019) (ordering 500 page per month processing rate).[3]

Although BOP is a large component within the Department of Justice, the FOIA Division only consists of 19.7 full-time FOIA staff. Baime Decl. ¶ 9. The FOIA Division's caseload has always been onerous. In Fiscal Year 2019, BOP received 6,695 FOIA requests and processed

---

[3]     Plaintiffs cite to *Clemente v. FBI,* 71 F. Supp. 3d 262 (D.D.C. 2014), as an example where a Court in this District ordered the FBI to process 5,000 pages a month. This higher processing rate was ordered because the FOIA requester was terminally ill and the Court, having reviewed Plaintiff's medical records, was concerned that "if the FBI processes documents at the rate it has proposed, [the FOIA requester] may not be able to complete her important research." *Clemente,* 71 F. Supp. 3d at 268-69.

9

5,639 FOIA requests.  See Department of Justice's Annual FOIA Reports available at: https://www.justice.gov/oip/reports-1   In Fiscal Year 2020, BOP received 7,433 FOIA requests and processed 6,143 requests.  Id.  So far, for this fiscal year, BOP currently 3,705 open FOIA requests and has processed 2,487 requests.  Baime Decl. ¶ 12.  The continued high number of FOIA requests submitted to BOP, coupled with additional tasks associated with COVID, has kept the FOIA Division under considerable stress as its limited FOIA processing staff and resources struggle to keep up with the high volume.  Id. ¶ 14.

Plaintiffs' request is currently being processed by BOP's Central Office.  Baime Decl. ¶ 12.  BOP's Central Office is comprised of 8 Government Information Specialists and 3 attorneys.  Id. ¶ 2.  The BOP's Central Office currently has 1,221 open FOIA requests and has processed 971 requests in Fiscal Year 2021.  Id. ¶ 12.  The BOP's central Office has received 190 COVID related FOIA requests and processed 136 of them.  Id.  The BOP's Central Office currently has 19 active FOIA cases in litigation and is also assisting with 5 cases unrelated to FOIA.  Id.  These numbers do not include the approximately 6,000 requests for BOP electronic medical records relating to the compassionate release / home confinement that the BOP's Central Office FOIA staff is also handling.  Id. ¶ 14.

BOP also notes that the other cases in litigation involve plaintiffs who narrowed the scope of the search and agreed to a 500 page per month processing rate.  Id. ¶ 13.  On the other hand, Plaintiffs have widened the scope of the search by requesting that 29 custodians, instead of the 18 suggested by BOP, be searched.  Id.  Plaintiffs have also requested that additional terms be included, knowing that this would significantly increase the number of potentially responsive records.  Ex. 2.

BOP further indicates that, due to COVID, most of its FOIA staff has had to perform additional duties, taking away time from processing of FOIA requests. Baime Decl. ¶ 14. For example, the Central Office FOIA staff has/is spending numerous hours gathering and providing attorneys their clients' medical records in support of requests for compassionate release / home confinement. *Id.* BOP also indicates that because the phone numbers and emails of BOP's FOIA Office are public, BOP's FOIA Office has received, and continues to receive, many calls and emails unrelated to FOIA but still requiring a response. *Id.* These calls and emails are from family members, or friends, trying to find out if a loved one is healthy. *Id.*

As noted previously, BOP's Central Office currently has 19 FOIA cases in litigation. *Id.* ¶ 12. The entry of an unusually demanding processing order, such as the one envisioned by Plaintiffs in the instant case, has direct and serious impact on BOP's overall FOIA program, such as an increase in backlogs because the time spent meeting the unusually demanding processing orders prevent BOP from responding to other FOIA requests and therefore increasing the risk of additional litigation. *Id.* ¶ 15. It would also require BOP to divert resources away from other requests, including those also in litigation. *Id.*

Plaintiffs also fail to note that BOP has made available substantial amounts of information regarding its COVID-19 response on its webpage, https://www.bop.gov/coronavirus/index.jsp. Among other information, that webpage reflects that BOP has administered 158,467 vaccine doses to federal inmates and its staff (which collectively total approximately 177,000 persons). BOP also provides a plethora of other information regarding its COVID-19 response—e.g., a map and information regarding current COVID-19 infections, data regarding its testing, and information on its home confinement policies and practices. Plaintiffs provide no explanation of how this information coupled with BOP's ongoing good faith efforts to respond to their FOIA request are

11

inadequate such that the Court should compel BOP to depart from typical FOIA processing standards.

\* \* \*

## CONCLUSION

For the reasons described above and detailed in Mr. Baime's declaration, BOP respectfully requests that the Court adopt its processing rate of 500 pages per month.

Dated:   May 5, 2021

Respectfully submitted,

CHANNING D. PHILLIPS
D.C. Bar # 415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:  /s/ *Kathleene Molen*
KATHLEENE MOLEN
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: (202) 803-1572
Kathleene.Molen@usdoj.gov

*Counsel for Defendant*