UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS, *et al.*,<br><br>Defendants. | Civil Action No. 20-3031 (RCL) |

**DECLARATION OF Eugene E. Baime**

I, Eugene E. Baime, declare the following pursuant to 28 U.S.C. § 1746:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as a Supervisory Attorney for the Freedom of Information Act/Privacy Act ("FOIA/PA") Section, which is part of the Office of General Counsel. My office is located in Washington, D.C. I have been in this position since November 3, 2014. From 1992 until 2014, I served as a commissioned officer and a judge advocate in the United States Army; my final active duty assignment from 2012 – 2014 was as Director, Trial Judiciary Staff, Military Commissions, U.S. Department of Defense. Prior to that assignment, I served as the Chief of the Formal and Informal Law Section of the Interagency Rule of Law Section at the U.S. Embassy in Kabul, Afghanistan and as an appellate judge on the U.S. Army Court of Criminal Appeals. I retired from the Army at the rank of colonel. I make this declaration on the basis of personal knowledge and information obtained in the course of my official duties.

2. In this capacity, I supervise BOP FOIA's Central Office staff, which is currently composed of 8 Government Information Specialists (GIS), 2 attorneys, and myself. We are

responsible for processing of requests for records submitted to BOP pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

3. I am familiar with BOP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to my staff, guidance to BOP staff located throughout the country, process and review FOIA requests, and advise on FOIA/PA litigation matters. I am familiar with both of Plaintiffs' FOIA requests, which are the subject of this litigation and are dated April 29, 2020 and July 1, 2020 (the latter, which is very similar to the April 29, 2020 request, but contained additional requests, was sent to DOJ's Mail Referral Unit and was forwarded to BOP on July 10, 2020).

4. The statements I make in this declaration are based upon my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and agency files I personally reviewed in the course of my official duties.

5. This declaration describes the FOIA section's current workload and resource constraints, situates Plaintiffs' FOIA request in that context, and describes BOP's plan for completing its response to Plaintiffs' request.

6. To date, BOP has located 237,000 potentially responsive records. The actual amount of pages will be much higher as a record may include more than one page of emails. These records represent electronic records associated with the 29 custodians identified by Plaintiffs. Plaintiffs requested BOP prioritize the records of BOP Director Michael Carvajal and identify 1-2 BOP officials who were most closely involved in the release, home-confinement, or transfer of inmates. BOP identified Andre Matevousian, Assistant Director – Correctional

2

Programs Division, and Hugh Hurwitz, Retired Assistant Director – Re-Entry Services Division and then Administration Division. BOP anticipates making its first release of information with respect to these three custodians on May 6, 2021, at a monthly processing rate of 500 pages per month.

7. Due to funding and contracting issues, BOP has been unable, at this time, to deduplicate the records for all 29 custodians. However, with the assistance of another Department of Justice Office, BOP provided Plaintiffs with a deduplication report with respect to the three custodians identified above. *See* Ex. 4 to Opposition to Motion to Compel. BOP hopes to provide additional deduplication reports in the near future with the assistance of this separate Department of Justice Office.

8. On April 2, 2021, BOP released 143 pages of non-exempt information pertaining to Congressional inquiries. Of those 143 pages, 73 pages consisted of 20 letters from members of Congress, and the remaining 70 pages consisted of 26 letters from BOP to members of Congress. Additionally, over the past year, BOP's FOIA office posted 157 different COVID records on its public facing web page and provided links to the ACLU. BOP's home page contains information related to BOP's response to FOIA and provides updates on a daily basis regarding COVID and vaccination statistics by institution and home confinement numbers. These records are responsive to numbers 1, 3, 4, 5, 7, 9, 10, and 11 of ACLU's request.

9. Despite being a large component, BOP's FOIA Section is small and only consists of 19.7 full-time FOIA staff spread out between the Central Office and six regional offices. I do not supervise staff assigned to the regions as BOP's FOIA program is decentralized, and the appropriate regional counsel supervise FOIA staff assigned to the regions. Central Office, which

receives all FOIA requests sent to BOP, reviews each one to ensure it complies with FOIA, sends the regions their FOIA requests, which is based on where the records are most likely to be, and processes the most requests in BOP, currently has a staff complement of 8 GIS's and 3 attorneys. Central Office generally processes the most complex requests BOP receives such as requests with national implications. Unlike most agencies, which receive the overwhelming of their requests via email, BOP receives thousands of hand-written FOIA requests each year, which must be scanned before assigning them to be processed.

10. The continued high number of FOIA requests submitted to BOP, coupled with additional tasks associated with COVID, has kept the FOIA Division under considerable stress as its limited FOIA processing staff struggle to keep up with the high volume of requests and other mission essential requirements.

11. The FOIA Section's workload is onerous. In Fiscal Year 2020, BOP received 9% of all FOIA requests sent to DOJ yet processed 28% of all complex requests DOJ processed. BOP received an average of 377 FOIA and processed an average of 312 requests per FOIA Professional compared to DOJ's respective averages of 166 and 161.   In Fiscal Year 2019, BOP received 6,695 FOIA requests and processed 5,639 FOIA requests.   In Fiscal Year 2020, BOP received 7,433 FOIA requests and processed 6,143 requests. In Fiscal Year 2020, Central Office received 2,412 and processed 2,138 requests.

12. Plaintiffs' request is being processed by BOP's Central Office.   The Central Office currently has 1,221 open FOIA requests, and has processed 971 requests in Fiscal Year 2021. The six regional offices have 3,705 open requests and have processed 2,487 requests in Fiscal Year 2021. Since the COVID pandemic began, Central Office received 190 COVID related FOIA

4

requests and processed 136 of them. Five open COVID requests, all of which seek voluminous records and one of which is in litigation, were received before the ACLU submitted its request. The Central Office FOIA section has 19 active FOIA cases in litigation and is assisting with 5 cases unrelated to FOIA. Each open request and case in litigation is important to the requester and to BOP to promote government transparency, and 518 requests were received prior to the ACLU's request

13.   Many of the cases in litigation have thousands of responsive records and involve plaintiffs who narrowed the scope of the search and agreed to a 500 page per month processing schedule. None of them widened the scope of their request once in litigation as the ACLU did when it provided BOP the names of 29 records custodians to search for records from in response to BOP's attempt to work with the ACLU and narrow the scope of their request in order to provide them records in a more expedient manner.

14.   Due to COVID, most of BOP's FOIA staff has had to perform additional duties, taking away time from processing FOIA requests.  First, Central Office FOIA staff located in Kansas spent approximately 30 days augmenting staff at USP Leavenworth during the end of 2020 beginning of 2021. Second, in approximately late April / early May of 2020, Central Office began providing attorneys their clients two years of medical records in support of motions for compassionate release and requests for home confinement with a goal of providing the records within 24 hours of receipt of the request. As of April 26, 2021, my office responded to 6,045 requests for medical records and released 966,235 pages of medical records. These numbers are not reflected in the FOIA processing numbers discussed in paragraphs 11 and 12. When we began this mission, it took my staff approximately 120 hours a week. We currently spend approximately

50 hours a week responding to these emergent requests directly affecting the safety and security of inmates. Third, because BOP's FOIA Office's phone numbers and emails are public information, BOP's FOIA Office also received and continues to receive an unusual high volume of calls and emails unrelated to FOIA, usually related to family members and friends trying to find out if a loved one is healthy, but still require response. Fourth, per DOJ guidelines, my office reviews all requests for information and records responsive to numerous General Accounting Office audits of BOP. Currently, one attorney spends roughly 75% of her time reviewing these responses, which BOP is required to answer within 20 days.

      15.     I understand Plaintiffs are requesting a higher processing rate of 2,000 pages per month for two months and then 1,000 pages in each subsequent month. BOP is processing Plaintiffs' FOIA request as quickly as is practicable in light of the resource constraints described above. A processing rate higher than 500 pages per month would necessarily require BOP to divert resources away from other requests, including those in litigation. Additionally, it would pose a safety and security risk to inmates since my office would be unable to respond to requests for medical records, and we would most assuredly fail to provide them within our goal of 24 hours. Without the appropriate medical records, defense attorneys will be unable to make cogent motions for compassionate release or requests for home confinement based on medical reasons, including their client's susceptibility to catching COVID. The entry of demanding production orders has a direct and serious impact on BOP's overall FOIA program, resulting in an increased backlog, a substantially higher risk of additional litigation, and, most importantly, a significant inability to respond to requests from American citizens seeking information related to how the government, and more specifically, BOP, operates. Most of these requests are much more focused than the one

6

subject of this litigation and seek specific records about BOP. By processing such a large number of records for this case, we will be unable to spend any appreciable time processing the other requesters, many of whom filed their requests prior to the ACLU.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 4th day of May, 2021

Eugene E. Baime
Supervisory Attorney