IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS,<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>*Defendants*. | No. 20-cv-3031 |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL
A VOLUME ESTIMATE AND EXPEDITED PROCESSING**

Plaintiffs seek (1) an accurate estimate of potentially responsive records and (2) a processing rate reflecting the urgency of their April 2020 expedited FOIA request for documents concerning the COVID-19 pandemic in federal prisons.

First, with regard to deduplication, the BOP does not dispute that a deduplicated volume estimate would allow the search—and entire case—to proceed more efficiently. In fact, Plaintiffs' Motion evidently prompted BOP into action. One week after Plaintiffs filed this Motion—months after the BOP promised to deduplicate the search results in "approximately two weeks"—the BOP provided a partial deduplication report for three custodians. That partial report confirms, as Plaintiffs expected, that rapid deduplication is possible and there are

thousands of duplicates. Both parties need an accurate volume estimate to refine the search.

Second, as for the processing rate, the BOP does not dispute that courts regularly order agencies to process thousands of pages per month in response to *expedited* requests like this one. Instead, the BOP relies on the supposed "common" processing rate in this District without acknowledging that this case involves an expedited request regarding a fast-moving and deadly pandemic, and similar cases have ordered even higher processing rates than the rate Plaintiffs seek here.

The Court should grant the Motion, require BOP to provide a deduplicated volume estimate by May 14, and order BOP to process at least 2,000 pages in May and June and 1,000 pages per month thereafter until processing is complete.

## ARGUMENT

I. **The Parties Need An Accurate, Deduplicated, Estimate of Potentially Responsive Records.**

Plaintiffs' Motion seeks an estimated, deduplicated total volume of responsive records. An accurate volume estimate will ensure that negotiations regarding a narrowed search are efficient and productive, and will allow the parties and this Court to understand the true scope of this case. The government appears to agree: one week after Plaintiffs filed this Motion, the BOP produced a partial deduplication report, showing the results for three custodians only. The partial report establishes that those three custodians alone had more than 2,000 duplicates. Dkt. 24 at 8. Plaintiffs expect that, with the addition of the remaining custodians, the number of duplicates will increase substantially, especially where emails were sent to multiple custodians.[1]

None of the BOP's arguments are compelling.

---

[1] Even in the unlikely event that deduplication will not "significantly reduce[]" the volume, Dkt. 24 at 1, that too would be valuable information for the parties in refining the scope of the search.

2

First, the BOP argues that the responsive volume here is large. But that is a red herring, because the volume is not deduplicated and contains—at an absolute minimum—thousands of duplicate records. As the government knows full well, Plaintiffs and the government are working to further narrow the scope of the search. But Plaintiffs and the government cannot intelligently do so, nor settle on a reasonable final review set, without knowing how many records the search actually recovers.

Second, the BOP argues for the first time that Plaintiffs' request does not "reasonably describe the records sought," asserting that BOP may object once "active litigation" commences. Dkt. 24 at 7. But the parties are obviously in "active litigation" now. And "it is undisputed that the defendant did not notify the plaintiffs at any point prior to the filing of this action that it believed the Request failed to reasonably describe the records sought or give the plaintiffs an opportunity to address such perceived failures." *New Orleans Workers' Ctr. for Racial Justice v. ICE*, 373 F. Supp.3d 16, 33 (D.D.C. 2019). Indeed, the BOP granted expedited processing the same day Plaintiffs submitted their request. *See* Dkt. 13 at 3 ("Defendant BOP admits that it granted expedited processing"). The BOP thus concluded that there was a "compelling need" for disclosure given the "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); Dkt. 1-1 at 13 (request for expedited processing). The time to object to Plaintiffs' request has long passed.

Nor is the BOP's belated objection meritorious. The BOP asserts that the request seeks "nearly every scrap of paper" about COVID-19, Dkt. 24 at 7, but that is incorrect. Plaintiffs seek documents concerning specific topics related to COVID-19 and "Detention Facilities," a defined term that means "all detention facilities administered by the BOP including prisons, BOP-run medical facilities, and private contract facilities." Dkt. 1-1 at 7, 8. For example, the request

3

seeks "[a]ll communications and documents discussing actions to address the risk of COVID-19 for people living and working in Detention Facilities and the likely outcomes of those actions." *Id.* at 8. That language "describes a discrete category of documents," and there should be "no dispute that Plaintiffs' request satisfies the literal requirements of the statute by reasonably describing the records sought." *ACLU v. Dep't of Justice*, 2014 WL 4954121, at *7 (N.D. Cal. Sept. 30, 2014) (request for "[a]ll requests, subpoenas, and applications for court orders or warrants seeking location information since January 1, 2008."); *see also Shapiro v. CIA*, 170 F. Supp.3d 147, 156 (D.D.C. 2016) (request for "any and all records . . . mentioning" Nelson Mandela "conveys exactly which records [requester] seeks"). And the reasonableness of Plaintiffs' request is "evidenced by the fact that the [BOP] did, in fact, craft a search that enabled it to locate" potentially responsive records. *ACLU*, 2014 WL 4954121, at *7; Dkt. 24 at 5 (discussing search proposals).[2]

      The BOP also points to information posted on its website, in an apparent attempt to avoid blame for its extreme delay in this case. Dkt. 24 at 4-5, 11-12. But the BOP does not suggest that it has satisfied its statutory obligations to Plaintiffs, and the BOP does not dispute that it has received scathing bipartisan criticism for its lack of transparency. Dkt. 23 at 3.

      After *more than a year* without a credible volume estimate, Plaintiffs need court assistance to ensure that the BOP provides accurate and timely search results, so that the parties can complete negotiations on the parameters of the search.

---

[2] The BOP's authority is inapposite. In *Dale v. IRS*, 238 F. Supp.2d 99, 101 (D.D.C. 2002), the requester sought "any and all documents . . . that refer or relate in any way to" *the requester*, who did not respond to the agency's letters identifying "several problems that needed to be corrected before the [agency] could conduct a search." This case involves a request for discrete categories of documents concerning COVID-19 and federal prisons, and the BOP had never suggested that the request was unclear until it filed its Opposition last week.

**II.     The BOP Should Process This Expedited Request At a Rate of 2,000 Pages In May and June and 1,000 Pages Per Month Thereafter.**

Plaintiffs' April 2020 expedited FOIA request concerns an ongoing public health emergency that disproportionately harms people living and working in prisons. The BOP's response to the pandemic was front-page news when Plaintiffs submitted their request last year, and that remains true today. Dkt. 23 at 3.[3] Under similar circumstances, courts have regularly ordered processing rates of thousands of pages per month. *Id.* at 7-8 (citing cases ordering monthly processing rates of 5,000, 2,850, and 1,000 pages). Accelerated processing is especially appropriate here because the BOP did not produce a single document until nearly a year after Plaintiffs submitted their expedited request, and nearly six months after Plaintiffs filed this lawsuit.

The BOP does not dispute any of that in its Opposition. Instead, the BOP argues that 500 pages per month is "a *common* processing rate." Dkt. 24 at 9 (emphasis added). But this case involves an *expedited* request—as BOP expressly conceded in its Answer. Dkt. 13 at 3. None of the cases the BOP cites involved expedited requests. *See* Dkt. 24 at 9.

The BOP largely ignores the Plaintiffs' authority. It only discusses one of the cases cited in Plaintiffs' Motion, and its attempt to distinguish that case falls flat. The BOP argues that *Clemente v. FBI*, 71 F. Supp.3d 262, 269 (D.D.C. 2014), is distinguishable because "the FOIA requester was terminally ill." Dkt. 24 at 9 n.3. But the BOP's argument ignores that this case is about thousands of prisoners and prison staff facing a pandemic that is infecting and killing them every day. When Plaintiffs submitted the request, more than 1,600 inmates or staff members

---

[3] *See also, e.g.,* Kaila Philo, *Federal Prisons Flunked the Pandemic, Senators Say*, Courthouse News Service (Apr. 15, 2021), https://www.courthousenews.com/federal-prisons-flunked-the-pandemic-senators-say.

were infected, and 30 had died.  Dkt. 1-1 at 8.  Since then, more than 50,000 inmates or staff have been infected, and more than 200 have died.[4]

At the BOP's proposed rate of 500 pages per month, the agency will not complete processing for years—even after the parties refine the scope of the search.  That would completely undermine the purpose of expedited processing, which is reserved for requesters like Plaintiffs who have shown the "capacity to disseminate information to the public" and a "compelling need" for disclosure based on the "urgency to inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v)(II); *Clemente*, 71 F. Supp.3d at 269 (ordering 5,000 pages per month where records "relate to an issue of national importance").  Thus, under the agency's proposed timeframe, "the information plaintiffs seek may be 'history' rather than 'news,' and plaintiffs' ability to inform citizens' views and promote government accountability through FOIA procedures will be significantly dampened."  Order, *Nat'l Public Radio, Inc. v. U.S. Department of Treasury*, No. 19-cv-17, 3-4 (D.D.C. Aug. 23, 2019) (Bates, J.) (Ex. A) (ordering agency to review 3,000 pages per month).

The BOP's last excuse is to point to its docket of other pending FOIA requests.  Dkt. 24 at 9-11.  But the BOP's numbers are largely inapposite because the BOP does not specify how many of the pending requests (if any) are entitled to expedited processing.  The BOP has determined that Plaintiffs' request *is* entitled to expedited processing, and "FOIA's 'expedited processing' provision recognizes that some requests are urgent enough to warrant a spot towards the front of the line."  *Protect Democracy Project, Inc. v. U.S. Dep't of Defense*, 263 F. Supp.3d 293, 296 (D.D.C. 2017); see also *American Immigration Council v. U.S. Dep't of Homeland*

---

[4] *A State-by-State Look at Coronavirus in Prisons*, The Marshall Project (last updated May 7, 2021), https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons.

*Sec.*, 470 F. Supp.3d 32, 39 (D.D.C. 2020) ("The public's interest in obtaining the requested non-exempt records outweighs any possible harm to other requesters that may result from accelerated processing of this request."). Plaintiffs appreciate that the BOP has finite resources, but "[t]he statute's commands can only be stretched so far to fit the needs of the agency; ultimately the agency must find a way to conform to the statute's mandates." *Nat'l Public Radio,* Ex. A at 4.

## CONCLUSION

For the foregoing reasons, as well those set forth in Plaintiffs' Motion to Compel, Plaintiffs respectfully request that the Court order the BOP to disclose the estimated volume of deduplicated potentially responsive records by May 14, 2021. Plaintiffs further request that the Court order the BOP to process at least 2,000 pages in May and June 2021, and then 1,000 pages per month thereafter until processing is complete.

DATED: May 12, 2021

Respectfully submitted,

/s/ Suraj Kumar
Thomas G. Hentoff (D.C. No. 438394)
Nicholas G. Gamse (D.C. No. 1018297)
Suraj Kumar (D.C. No. 1632752)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
thentoff@wc.com
ngamse@wc.com
skumar@wc.com

Somil Trivedi (D.C. No. 1617967)
American Civil Liberties Union Foundation
915 Fifteenth Street, N.W.
Washington, DC 20005
(202) 715-0802

strivedi@aclu.org

Ezekiel R. Edwards (admitted *pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street – 18th Floor
New York, NY 10004
(212) 549-2610
eedwards@aclu.org

Arthur B. Spitzer (D.C. No. 235960)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, NW – 2nd floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

David L. Sobel (D.C. No. 360418)
5335 Wisconsin Avenue, NW
Suite 640
Washington, DC 20015
(202) 246-6180
sobel@att.net

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I, Suraj Kumar, counsel for Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation, certify that, on May 12, 2021, a copy of this Reply was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

/s/ Suraj Kumar  
Suraj Kumar
