# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL PUBLIC RADIO, INC., et al.,

Plaintiffs,

v.

U.S. DEPARTMENT OF TREASURY,

Defendant.

Civil Action No. 19-17 (JDB)

**ORDER**

Media organization National Public Radio, Inc., and journalist Tim Mak bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the release of records from the United States Department of Treasury and its Office of Foreign Assets Control. Compl. [ECF No. 1] ¶¶ 1–3. Plaintiffs' four FOIA requests seek records related to Russian oligarchs, a Russian agent, a Russian firearms maker, and gun lobbyist organizations and individuals in the United States. Id. ¶¶ 13, 20, 23, 26. Through these requests, plaintiffs seek to further "the public's understanding of the breadth and depth of Russian infiltration [into the American political process], Treasury's handling of the Russians' apparent attempts to influence it[,] and Treasury's later decision in 2018 to impose sanctions against" certain Russian individuals and entities. Id. ¶ 12.

Before the Court is the parties' dispute about the schedule that should govern processing and production of relevant documents. The parties discussed this issue at length, but they have been unable to reach a mutually agreeable timetable. See Mar. 11, 2019, Joint Status Rpt. [ECF No. 9]; Mar. 25, 2019, Joint Status Rpt. [ECF No. 10]; May 6, 2019, Joint Status Rpt. [ECF No.

11]. The Court held a status conference on July 23, 2019, to further discuss the issue. Each side then filed a written proposal for further proceedings. See Pls.' Proposal Regarding Production of Docs. ("Pls.' Proposal") [ECF No. 14]; Def.'s Proposed Processing Schedule ("Def.'s Proposal") [ECF No. 15]. Over the course of discussions about the processing and production of documents, plaintiffs have narrowed and prioritized their requests—reducing the approximate number of potentially responsive documents from 76,000 to 52,000—and the agency has agreed to a procedure that will avoid review and production of large public documents such as Congressional hearing transcripts. Pls.' Proposal at 2–3; Def.'s Proposal at 1; May 6, 2019, Joint Status Rpt. at 2. However, the parties continue to disagree about the appropriate pace for processing the 52,000 documents that remain.

    The agency notes that it faces significant personnel and resource limitations and that the best it can offer is to review up to 2,000 pages per month or to produce up to 350 responsive pages per month, whichever limit is reached first. Def.'s Proposal at 2–3; see also Decl. of Marshall Fields, Jr., Ex. to Def.'s Proposal ("Fields Decl.") [ECF No. 15-1] ¶¶ 11–21 (outlining agency personnel and resource shortages). This proposal, the agency explains, "reflects the fact that it takes significantly more time and resources to process records for release or withholding than to determine a record's responsiveness." Def.'s Proposal at 2. Furthermore, because the agency has "finite resources," a higher processing rate "would require reallocating resources away from other lawsuits" and might allow plaintiffs to skip the line in relation to other earlier-filed FOIA requests currently being processed. Id. at 5; Fields Decl. ¶¶ 25–27. Under the agency's proposal, it would complete processing and production of documents responsive to plaintiffs' narrowed request in between two years—if no documents were found to be responsive—and twelve years—if all documents were found to be responsive.

Plaintiffs propose that the agency process documents at a rate of 5,000 pages per month. Pls.' Proposal at 3. This number is reasonable, plaintiffs argue, because FOIA is designed to "provide prompt access to government records," which in turn ensures "an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." Id. at 4–5 (quoting Clemente v. FBI, 71 F. Supp. 3d 262, 268 (D.D.C. 2014)). Plaintiffs note that the subject matter of their FOIA requests implicates urgent issues of national importance. "Indeed," they argue, "one could hardly conceive of documents more in the public interest now than those that shed light on foreigners attempting to undermine American systems and the government's response to them." Id. at 6. And further, they argue, since the time limit articulated in the FOIA statute is described in terms of "days"—not months or years—"a processing schedule that does not see the completion of production for up to 12 years (even after significant narrowing), is wholly unreasonable." Id. at 4.

The Court has also considered the number and type of documents, the current backlog of FOIA requests as reported by the agency, and the specific circumstances of the case and concludes that plaintiffs' proposed schedule would set the monthly review requirement too high. However, although the Court is sympathetic to the agency's constraints, the plaintiffs have a strong argument for setting a more rapid timeline for production than what defendants propose. "[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." Payne Enters. v. United States, 837 F.2d 486, 494 (D.C. Cir. 1988). A schedule that results in production over the next two-to-twelve years (most likely somewhere in the middle of that range) is unreasonable under these circumstances. Here, the plaintiffs represent a news organization with the "capacity to disseminate information to the public" and the records sought "relate to an issue of national importance," factors which favor

expeditious processing of plaintiffs' FOIA requests.  Clemente, 71 F. Supp. 3d at 269.  In six, seven, or eight years' time (or more), the information plaintiffs seek may be "history" rather than "news," and plaintiffs' ability to inform citizens' views and promote government accountability through FOIA procedures will be significantly dampened.  Courts have the authority "to impose concrete deadlines on agencies that delay the processing of requests meriting expedition" and have rejected "the notion that the decision of practicability is to be determined solely by the agency."  EPIC v. DOJ, 416 F. Supp. 2d 30, 38 (D.D.C. 2006) (collecting cases).  The statute's commands can only be stretched so far to fit the needs of the agency; ultimately the agency must find a way to conform to the statute's mandates.

Hence, upon consideration of the parties' filings, the positions presented at the status conference, and the entire record herein, it is hereby **ORDERED** that the agency shall review documents at a rate of 3,000 documents per month, regardless of how many documents are identified as being responsive.  At this rate, the agency will process the remaining documents within the next 17 months or so—still a long time to wait, but reasonable in light of the circumstances of this case.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated:  August 22, 2019